LOWY, J.
**428 In this public records case, Boston Globe Media Partners, LLC (Globe), appeals from an order of the Superior Court granting *130 the Department of Public Health's (DPH) motion for summary judgment and denying the Globe's motion for summary judgment. The Globe asked the judge to declare that electronic indices of publicly available birth and marriage data constitute public records and to order DPH to produce them. DPH argued that it could withhold the requested indices pursuant to G. L. c. 4, § 7, Twenty-sixth (a ) (exemption [a ] ), which exempts from the definition of public records "materials or data" that are "specifically or by necessary implication exempted from disclosure by statute." DPH also argued that it could withhold the requested indices pursuant to G. L. c. 4, § 7, Twenty-sixth (c ) (exemption [c ] ), which exempts from the definition of public records "personnel and medical files or information [and] any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." The judge concluded DPH could withhold the indices pursuant to exemption (c ), but not pursuant to exemption (a ).
We remand for further proceedings on both exemptions. The Globe's request necessitates an approach to exemption (a ) that takes into account future requests for the indices. The application of exemption (c ) involves a privacy issue we have yet to address in the public records context, namely, whether there is a greater privacy interest in a compilation of personal information than in the discrete information that a compilation summarizes.[1] We conclude that, in certain circumstances, there is.
**429 With respect to exemption (a ), the judge on remand should make factual findings about the extent to which the indices requested here could be compared against later-requested indices to reveal information protected from public disclosure by statute. The judge should then determine whether the risk of revealing such information brings the requested indices within the scope of exemption (a ).
With respect to exemption (c ), which protects personal privacy, the judge on remand should first decide the extent to which the indices requested here could be compared against later-requested indices to reveal medical information absolutely exempt from the public records law. If necessary, the judge should then decide whether there is a privacy interest in the requested indices. To do so, the judge should make further findings on (1) the extent to which multiple indices could be compared to reveal private information; (2) whether the requested compilation is already available in the aggregate form requested or, if not, the ease with which it can be assembled from public information; (3) whether DPH has shown that releasing the indices could pose a risk of identity theft or fraud; and (4) the extent to which the indices could facilitate unwanted intrusions.
If there is a privacy interest in the requested indices, then the judge should decide whether the public interest in disclosure substantially outweighs that interest. People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 291-292, 76 N.E.3d 227 (2017) ( PETA ). Because we have yet to precisely define the contours of this public interest analysis, we clarify that the public interest is not limited to the interest in learning about government operations. To fully analyze the public interest here, the *131 judge should make further findings on (1) whether the Globe could use the indices to learn about government by scrutinizing whether DPH is properly recording births and marriages, and (2) whether releasing the indices could serve public interests other than the interest in learning about government.[2]
Background. The following background is taken from the parties' stipulated facts and exhibits. A Globe reporter submitted a **430 public records request to DPH for electronic indices of the publicly available birth, marriage, divorce, and death records maintained by DPH's Registry of Vital Records and Statistics (registry). The Globe later clarified that it was requesting only "an electronic copy of the most up-to-date [indices] made available to the public on computer terminals in the [r]egistry's research room." The request did not include indices from the nonpublic Vitals Information Partnership (VIP) centralized database, which contains birth data.
The registry maintains a research room that is open eleven hours per week. The research room includes searchable databases publicly accessible on computers for nine dollars per hour. The computers do not have a print function, although there are no restrictions on transcribing information found on the computers. At the time the stipulated facts were filed in the Superior Court, the databases included information about births occurring in Massachusetts from 1953 through approximately January 2011 and marriages occurring since 1983. Births occurring after approximately January 2011 were recorded only in the VIP database, which was not accessible through the public computers.[3] Each entry in the marriage database included last name, first name, date of marriage, spouse, place where the license was filed, certificate number, and the location of the paper record in the registry's vault. Although not entirely clear from the stipulated facts, entries in the birth database seem to have included last name, first name, middle name, date of birth, place of birth, gender, names of parents, and the location of the record in the vault.[4]
**431 *132 Birth and marriage information is available other than through the registry's public computer databases. For example, the public may inspect, but may not photocopy, printed birth and marriage indices in the registry's research room. The public also may request individual birth and marriage certificates from the registry or from the relevant city or town.
After DPH did not respond to the Globe's request, the Globe appealed to the supervisor of records (supervisor) in the Secretary of State's office. See G. L. c. 66, § 10A (a ). The supervisor ordered DPH to disclose the records. DPH provided the Globe with responsive death and divorce information, but declined to release the requested birth and marriage indices. The Globe appealed, and the supervisor again ordered DPH to disclose the requested information. However, in response to DPH's request for reconsideration, the supervisor decided that DPH could withhold the birth and marriage indices pursuant to exemption (a ). The supervisor did not rule on DPH's exemption (c ) claim, stating only that DPH made "a compelling argument" that the indices could also be withheld under exemption (c ).
The Globe then commenced an action against DPH in Superior Court, seeking declaratory and injunctive relief under the public records law, G. L. c. 66, § 10, and the declaratory judgment act, G. L. c. 231A, § 1. See G. L. c. 66, § 10A (c ). In granting DPH's motion for summary judgment based on the parties' stipulated facts and exhibits, the judge concluded that DPH could withhold the indices pursuant to exemption (c ), but not pursuant to exemption (a ). The Globe appealed. We transferred the case to this court on our own motion.
For the reasons discussed below, we remand for further proceedings with respect to exemptions (a ) and (c ).
Discussion. We review "a grant of summary judgment de novo ... to determine 'whether ... all material facts have been established and the moving party is entitled to judgment as a matter of law' " (citation omitted). District Attorney for the Northern Dist. v. School Comm. of Wayland, 455 Mass. 561, 566, 918 N.E.2d 796 (2009), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).
**432 The public records law, G. L. c. 66, § 10 (a ), requires the government to release upon request materials that fall under the definition of "[p]ublic records," G. L. c. 4, § 7, Twenty-sixth. There is a statutory presumption of disclosure of such records. G. L. c. 66, § 10A (d ) (1) (iv) ("a presumption shall exist that each record sought is public and the burden shall be on the defendant agency or municipality to prove, by a preponderance of the evidence, that such record or portion of the record may be withheld in accordance with [S]tate or [F]ederal law").[5] Therefore, "the statutory *133 exemptions [from the definition of public records] must be strictly and narrowly construed." Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 380, 788 N.E.2d 513 (2003) ( District Attorney for the Middle Dist. ), quoting General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 801-802, 711 N.E.2d 589 (1999), overruled on other grounds by DaRosa v. New Bedford, 471 Mass. 446, 30 N.E.3d 790 (2015).
1. Exemption ( a ).[6] DPH argues that the requested indices are exempt from the definition of public records by G. L. c. 4, § 7, **433 Twenty-sixth (a ), which encompasses "materials or data" that are "specifically or by necessary implication exempted from disclosure by statute." DPH points to five statutes that purportedly exempt the requested indices from disclosure: the statute establishing the VIP database, two statutes that expressly remove certain birth data from the public records law, a statute that impounds certain vital records, and a statute that addresses the amendment of vital records.[7] We conclude that the statute establishing the VIP database pertains to information the Globe is not requesting and, therefore, does not exempt the requested indices from disclosure. The same can likely be *134 said for the statutes removing certain birth data from the public records law. However, we remand for further findings about the extent to which the indices requested here could be compared against later-requested indices to reveal information protected from public disclosure by the statutes addressing the impoundment and amendment of vital records.
a. VIP database statute. General Laws c. 46, § 33, first par., mandates that the Registry establish a "centralized, automated database for the system of vital records and statistics." The registry implements § 33 through the VIP database. Because the VIP
**434 database is not available on the registry's public computers, the Globe is not requesting data from it. Therefore, § 33 does not prohibit disclosure of the requested indices. DPH argues that § 33 "reflects a policy against bulk dissemination of birth and marriage information, regardless of where a discrete record happens to be registered at a particular time." We disagree. Even if the VIP database may not be accessed through the public records law, an issue we do not decide, information in the database that is not otherwise exempt from disclosure may still constitute a public record if stored in a repository that is subject to a public records request. Cf. Hastings & Sons Publ. Co. v. City Treas. of Lynn, 374 Mass. 812, 820 n.10, 375 N.E.2d 299 (1978) (where tax returns are confidential by statute and "information contained in [requested] payroll records can also be found in tax returns," payroll records may still be disclosed).
b. Statutes expressly removing certain birth data from public records law. DPH suggests that two statutes, G. L. c. 111, § 24B, and G. L. c. 46, § 4A, that expressly remove from the public records law certain birth information, also remove from the public records law the birth data in the requested indices. Because the birth data in the indices does not appear to be governed by either § 24B or § 4A, we disagree.
Birth data sent to the Commissioner of Public Health (commissioner) is exempt from the public records law. G. L. c. 111, § 24B.[8] By contrast, birth data is transmitted to the registry, either directly or through local clerks, pursuant to statutes that do not implicate the public records law. See, e.g., G. L. c. 46, § 3A ("person in charge of a hospital" must file birth reports "with the town clerk of the city or town wherein the birth occurred" and, "[i]f the hospital ... delivers more than [ninety-nine] births per year, [the birth] report shall be prepared on an electronic system of birth registration ... and transmitted to the [S]tate registrar [of vital records and statistics]"); G. L. c. 46, § 17 ("clerk of each town and of each city shall ... transmit to the [S]tate registrar [of **435 vital records and statistics] ... the original records of ... births"). These latter statutes seem to apply to the registry birth information from which the requested indices are derived.[9] *135 The same reasoning applies to G. L. c. 46, § 4A, which removes from the public records law birth lists sent from town clerks to local boards of health.[10] Unlike these lists, birth information transmitted from town clerks to the registry is governed by statutes that do not mention public records. See, e.g., G. L. c. 46, § 17.
Because G. L. c. 111, § 24B, and G. L. c. 46, § 4A, do not appear to govern the transfer of birth information to the Registry, they likely do not preclude the disclosure of indices derived from Registry databases. As discussed supra, information in repositories exempt from the public records law may still be public if located in a repository that is not exempt. And by removing from the public records law birth information transmitted to the commissioner and to local boards of health, but not removing from the public records law birth information transmitted to the registry, the Legislature demonstrated an intent not to exempt the latter information.[11]
c. Statutes addressing impoundment and amendment of vital records. Absent a court order, G. L. c. 46, § 2A, permits only specified individuals to examine particular vital records, including those of **436 children born to unmarried parents.[12] Unlike the statutes we have already addressed, § 2A restricts access to particular records regardless of where those records are deposited or how they are transmitted. Cf. District Attorney for the Middle Dist., 439 Mass. at 383, 788 N.E.2d 513 (under criminal offender record information [CORI] statute, "court record's status as a public record does not depend on the identity of the custodian from whom that public record is sought"). Although § 2A does not address the public records law, it exempts certain records from disclosure by impounding them.[13] Cf. *136 District Attorney for the Middle Dist., supra at 381, 383, 788 N.E.2d 513, quoting G. L. c. 4, § 7, Twenty-sixth (a ) (where criminal offender record information may be disseminated only to particular individuals and entities under CORI statute, that statute "operates as an exception to the definition of '[p]ublic records' ").
General Laws c. 46, § 13 (h ), requires local clerks or the registry to amend vital records. Other subsections of G. L. c. 46, § 13, set forth the specific changes that warrant amendment: a change in status from having been born to unmarried parents to having been born to married parents, which may occur if certain procedures are followed after parents marry, G. L. c. 46, § 13 (c ) ; acknowledgment or judgment of paternity, G. L. c. 46, § 13 (d ) ; medical intervention for sex reassignment, G. L. c. 46, § 13 (e ) ; withdrawal of acknowledgment of paternity or judgment of nonpaternity, G. L. c. 46, § 13 (f ) ; and adoption, G. L. c. 46, § 13 (g ). Absent court order, § 13 (h ) allows only particular individuals to examine the original versions of amended records. As with the records protected by G. L. c. 46, § 2A, the original records are exempt from disclosure because there is a statutory restriction on who can view them.
According to the stipulated facts, the registry's public computers **437 are updated nightly to remove records protected by G. L. c. 46, § 2A ; add records no longer protected by § 2A ; and amend records changed pursuant to G. L. c. 46, § 13 (h ). Because the records protected by § 2A are not available on the registry's public computers, the Globe is not requesting them. And because pre-amendment information is not available on the public computers, the Globe is not requesting information protected by § 13 (h ).
However, protected information could be gleaned through comparison if the Globe or another requester were to obtain in the future an updated version of the same indices requested here.[14] A side-by-side comparison of the same person's data at different points in time might reveal, for example, the biological parents' names of an individual who has since been adopted, the name of a putative father whose nonpaternity has since been established, and the previous name and sex of an individual who has since completed sex reassignment surgery.
The motion judge concluded that the question whether such a comparison would disclose statutorily protected information was not presented because the Globe requested a single index from a single moment in time. She therefore "expressly limited" her conclusion that exemption (a ) does not prohibit disclosure to the request at issue, and clarified that her reasoning did "not extend to any future request that may be made." This approach fails to recognize that we are confronted with a situation in which the requested records evolve daily to protect information impounded by statute. The indices are, as the parties observe in their stipulated facts, "dynamic." Today's current information may be tomorrow's record protected from public view by G. L. c. 46, § 13 (h ), because of an amendment, or tomorrow's indication that an entry has been removed pursuant to G. L. c. 46, § 2A. To examine the Globe's request in a vacuum is to ignore that an index from the present is entwined with indices from the future.
The judge on remand should make factual findings about the extent to which the *137 indices requested here could be compared against later-requested indices to reveal information protected from public disclosure by statute. The judge should then determine whether the risk of revealing such information brings the **438 requested indices within the scope of exemption (a ).[15]
We turn now to DPH's argument that the records may be withheld pursuant to exemption (c ).
2. Exemption ( c ). DPH also contends the requested materials are exempt from the definition of public records by G. L. c. 4, § 7, Twenty-sixth (c ), which encompasses "personnel and medical files or information" and "any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy." On remand, the judge should make further findings with respect to this exemption. First, the judge should decide the extent to which the indices requested here could be compared against later-requested indices to reveal medical information absolutely exempt from the public records law. If necessary, the judge should then decide whether there is a privacy interest in the requested indices and, if there is, whether the public interest in disclosure substantially outweighs that interest.
Exemption (c ) includes two categories of records. The first category, "personnel and medical files or information," G. L. c. 4, § 7, Twenty-sixth (c ), is "absolutely exempt from mandatory disclosure where the files or information are of a personal nature and relate to a particular individual." Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 438, 446 N.E.2d 1051 (1983) ( Boston Retirement Bd. ). See Wakefield Teachers Ass'n v. School Comm. of Wakefield, 431 Mass. 792, 799-800, 731 N.E.2d 63 (2000). DPH argued below that the requested records constitute "medical files or information." G. L. c. 4, § 7, Twenty-sixth (c ). DPH contended that because DPH updates the vital records of someone who "has completed medical intervention for the purpose of permanent sex reassignment," G. L. c. 46, § 13 (e ), the birth index could be used to identify people who have completed such medical intervention. That someone "has completed medical intervention for the purpose of permanent sex reassignment" is, by its terms, "medical ... information," G. L. c. 4, § 7, Twenty-sixth (c ). The judge nevertheless rejected DPH's argument because the requested index will not itself reveal that someone has completed medical intervention for permanent sex reassignment. Because we decline to view the Globe's request in isolation, on remand the judge **439 should decide the extent to which the indices requested here could be compared against later-requested indices to reveal medical information absolutely exempt from the public records law.
The second category of records under exemption (c ), "any other materials or data relating to a specifically named individual," is exempt only if disclosure "may constitute an unwarranted invasion of personal privacy." G. L. c. 4, § 7, Twenty-sixth (c ). See Wakefield Teachers Ass'n, 431 Mass. at 796-797, 731 N.E.2d 63. DPH contends that the requested indices fall within this second category. Where the second category under exemption (c ) is implicated, a court should first determine whether there is a privacy interest in the requested records. If there is not, then the requested material does not fall under exemption *138 (c ). If there is a privacy interest, then "[e]xemption (c ) requires a balancing test: where the public interest in obtaining the requested information substantially outweighs the seriousness of any invasion of privacy, the private interest in preventing disclosure must yield." PETA, 477 Mass. at 291-292, 76 N.E.3d 227. Compare Pottle v. School Comm. of Braintree, 395 Mass. 861, 866 & n.6, 482 N.E.2d 813 (1985) (unnecessary to balance public and private interests where disclosure would not "invade the privacy" of specified individuals), with PETA, supra at 292 n.14, 76 N.E.3d 227 ("if the judge on remand finds some privacy interest does exist in the redacted information, [requester] must be afforded an opportunity to articulate a public interest on the other side of the balancing test").
a. Privacy interest. In deciding whether there is a privacy interest in requested records and the weight to be accorded any such interest, "we have looked to three factors ... : (1) whether disclosure would result in personal embarrassment to an individual of normal sensibilities; (2) whether the materials sought contain intimate details of a highly personal nature; and (3) whether the same information is available from other sources" (footnote omitted). PETA, 477 Mass. at 292, 76 N.E.3d 227, citing Globe Newspaper Co. v. Police Comm'r of Boston, 419 Mass. 852, 858, 648 N.E.2d 419 (1995) ( Police Comm'r of Boston ). " '[O]ther case-specific relevant factors' may [also] influence the calculus." PETA, supra, quoting Police Comm'r of Boston, supra.
The Globe asserts, contrary to PETA, 477 Mass. at 292, 76 N.E.3d 227, that whether the requested materials contain intimate details of a highly personal nature is dispositive. There are cases interpreting exemption (c ) that support this argument. See, e.g., Cape Cod Times v. Sheriff of Barnstable County, 443 Mass. 587, 594-595, 823 N.E.2d 375 (2005) ;
**440 Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 157, 385 N.E.2d 505 (1979) ( Collector of Lynn ).
Other cases, like PETA, supra, suggest that whether the requested records include intimate details of a highly personal nature is but one factor to consider. See Champa v. Weston Pub. Schs., 473 Mass. 86, 96, 39 N.E.3d 435 (2015) ; Doe v. Registrar of Motor Vehicles, 26 Mass. App. Ct. 415, 425, 528 N.E.2d 880 (1988) ( Registrar of Motor Vehicles ). Additionally, some decisions that claim to equate invasion of privacy with requests for intimate and highly personal information consider other factors as well, such as public employees' "diminished expectations of privacy," Pottle, 395 Mass. at 866, 482 N.E.2d 813, and the requested information's availability from other sources, see Collector of Lynn, 377 Mass. at 157, 385 N.E.2d 505. These cases suggest, and we conclude, that whether the requested information is intimate and highly personal is one of many possible factors to consider when evaluating the privacy interest in nondisclosure.
One case-specific factor here is the aggregate nature of the requested indices, which combine discrete information about millions of individuals. We have yet to address in the public records context whether there is a greater privacy interest in a compilation of personal information than in the discrete information that a compilation summarizes. We now recognize, as have the United States Supreme Court and the Appeals Court, that in certain circumstances there is. See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 764, 765, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) ( Reporters Comm. for Freedom of the Press ) (addressing "whether the compilation of otherwise hard-to-obtain information *139 alters the privacy interest implicated by disclosure of that information," and describing congressional "recognition of the power of compilations to affect personal privacy that outstrips the combined power of the bits of information contained within"); Registrar of Motor Vehicles, 26 Mass. App. Ct. at 425, 528 N.E.2d 880 ("aggregate effect on the privacy of the total number of people whose data are disseminated weighs against disclosure").
By way of comparison, in the context of construing the Fourth Amendment to the United States Constitution, we have said that the reasonable expectation of privacy in one's physical location is a function of how much location data the government seeks. See Commonwealth v. Augustine, 467 Mass. 230, 253, 4 N.E.3d 846 (2014), S.C., 470 Mass. 837, 26 N.E.3d 709 (2015), and 472 Mass. 448, 35 N.E.3d 688 (2015) ("a number of courts -- including this court -- have determined that it is only when [vehicle location] tracking takes place over extended periods **441 of time that the cumulative nature of the information collected implicates a privacy interest"); id. at 254, 4 N.E.3d 846 ("it is likely that the duration of the period for which historical [location information] is sought will be a relevant consideration in the reasonable expectation of privacy calculus"). Likewise, the privacy interest in a public records request may increase if the requested record is a compilation. Cf. New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 415, 387 N.E.2d 110 (1979) (where records "aggregate information concerning the criminal history of an individual," they "threaten the privacy interests" protected by CORI statute).
The Globe contends there is a greater privacy interest in "vertical compilations" that "aggregate information about specific individuals," such as an individual's criminal record, than in "horizontal compilations" that "provide a limited amount of information about many people," such as a telephone book. We agree that a minimal amount of nonintrusive data does not become private merely because it relates to millions of people. But where requested records include a fair amount of personal information, it matters how many individuals the records implicate: the more people affected by disclosure, the greater the privacy concerns.
The requested indices here compile enough personal data for the number of people affected to influence the privacy analysis. The marriage index entries would likely include name, date of marriage, spouse, place where the license was filed, and certificate number. And at least some of the birth index entries would likely include name, date of birth, place of birth, gender, and parents' names.
The Globe points out that "the birthdate and marriage information is not conjoined with any other information, ... such as medical or criminal histories, [S]ocial [S]ecurity numbers[,] or financial data." If the indices included this type of other information, then there would be a greater privacy interest in preventing their disclosure. That does not mean the aggregate nature of the indices as they exist has no impact on the privacy analysis. The requested indices combine personal details about millions of individuals. Their composite nature weighs in favor of a conclusion that there is a privacy interest in them.
Other factors weigh in favor of the same conclusion. The requested information concerns private citizens rather than public employees or, where a public employee is included in the index, **442 data neither related to nor collected in the course of employment. See PETA, 477 Mass. at 293-294, 76 N.E.3d 227 ("exemption [c ] balancing test ... should account for the different privacy interests ... held by a public employee *140 versus a private one"). See also National Archives & Records Admin. v. Favish, 541 U.S. 157, 166, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) ( Favish ), quoting Reporters Comm. for Freedom of the Press, 489 U.S. at 780, 109 S.Ct. 1468 ("where the subject of the documents 'is a private citizen,' 'the privacy interest ... is at its apex' "). And the people identified in the indices had no choice in the submission of their personal information to the registry. See Georgiou v. Commissioner of the Dep't of Indus. Accs., 67 Mass. App. Ct. 428, 436, 437, 854 N.E.2d 130 (2006) (where requested information, amongst other characteristics, was "not information that [affected employees] had any part in forwarding to" agency, disclosure would implicate privacy interests).[16] Nor does the Registrar have the information of people identified in the indices "because of any failure on [their] part to comply with legal obligations." Id. at 436, 854 N.E.2d 130. Cf. Collector of Lynn, 377 Mass. at 157, 158, 385 N.E.2d 505 (requiring disclosure of "lists of real estate tax delinquents" because, amongst other reasons, "an owner of property ... does not have the same expectation of privacy concerning [a] legal obligation as he [or she] has in ... private financial affairs").
Although these factors suggest there is a privacy interest in the requested indices, the record is insufficient to measure other relevant factors adequately. We therefore remand for additional findings on the following four issues: (1) the extent to which multiple indices could be compared to reveal private information, (2) the availability from other sources of the information in the requested indices, (3) the risk from disclosure of identity theft or fraud, and (4) the extent to which disclosure could result in unwanted intrusions.
i. Comparing multiple indices. Earlier in this opinion, we stated that on remand the judge should make factual findings about the extent to which the indices requested here could be compared against later-requested indices to reveal information protected from public disclosure by statute or medical information absolutely exempt from the public records law. The judge also should make factual findings about the extent to which comparing indices could reveal private information, including "intimate details **443 of a highly personal nature." PETA, 477 Mass. at 292, 76%20N.E.3d%20227">76 N.E.3d 227.[17]
ii. Availability from other sources. Because the Globe's request by its terms includes only information that is available on the registry's public computers, the Globe contends that any privacy interest in the indices is significantly reduced. "[T]he gravity of any putative invasion of privacy resulting from disclosure *141 ... may be reduced if 'substantially the same information is available from other sources.' " PETA, 477 Mass. at 294, 76 N.E.3d 227, quoting Collector of Lynn, 377 Mass. at 157, 385 N.E.2d 505. Whether "substantially the same information is available" becomes a difficult inquiry where, as here, the requested records compile discrete information. If each piece of information is publicly available but the data are not available in the aggregate, is the privacy interest in the compilation significantly reduced?
In the past, we have avoided answering this question by focusing on the availability of requested information regardless of how it was packaged and how easily it could be obtained. See Collector of Lynn, 377 Mass. at 158, 385 N.E.2d 505 ("anyone may for a fee obtain a certificate itemizing all amounts payable on account of tax liens on a piece of property.... The public availability of this information reduces the owner's expectation of privacy in nondisclosure of the list of tax delinquents" [citation omitted; emphasis added] ). We also have recognized, however, that public information may be considered private for purposes of the public records law. Police Comm'r of Boston, 419 Mass. at 860, 648 N.E.2d 419 ("otherwise private information does not necessarily lose that character by having been at one time placed in the public domain"). And in deciding that individuals have "a constitutionally protected privacy interest" in information disclosed pursuant to the sex offender act, we have cited cases that discuss the Federal Freedom **444 of Information Act for the proposition that, "[i]n certain instances, the aggregation and dissemination of publicly available information has triggered a right to privacy." Doe v. Attorney Gen., 426 Mass. 136, 143, 686 N.E.2d 1007 (1997), citing United States Dep't of Defense v. Federal Labor Relations Auth., 510 U.S. 487, 500, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994), and Reporters Comm. for Freedom of the Press, 489 U.S. at 762-764, 109 S.Ct. 1468.
It follows from these cases, and from our recognition today that there may be a greater privacy interest in a compilation of personal information than in the discrete information that a compilation summarizes, that the availability of a requested compilation itself, not merely the availability of information that makes up the compilation, will significantly reduce the privacy interest in that compilation. The more difficult it is to create a requested compilation using public sources, the greater the privacy interest in the compilation. See Reporters Comm. for Freedom of the Press, 489 U.S. at 764, 109 S.Ct. 1468 (discussing "distinction, in terms of personal privacy, between scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole"); Registrar of Motor Vehicles, 26 Mass. App. Ct. at 427, 528 N.E.2d 880 (where "obtain[ing] the [requested] data would require inquiry of many sources, a far more cumbersome procedure, ... disclosure may still be viewed as a significant invasion").
Here, the Globe is requesting indices that compile in one place all the information on the registry's public databases. Thus, although the individual data points being requested are publicly available, it is unclear to what extent the aggregate data also is available.
The requested indices are not accessible on the registry's public computers, which require searching for individual entries. And using the databases to manually compile the requested indices would involve extensive and costly research.[18] Because *142 using the **445 databases "to obtain the data would require ... a far more cumbersome procedure" than examining the requested indices, Registrar of Motor Vehicles, 26 Mass. App. Ct. at 427, 528 N.E.2d 880, the availability of individual data points on the public computers does not significantly reduce the privacy interest in the indices. The same reasoning applies to the availability of individual birth and marriage certificates, which the public may request from the registry or from the relevant city or town; and to hard copy birth and marriage indices, which the public may inspect in the registry's research room but which may not be photocopied.
However, we cannot determine based on the undisputed facts the impact on the privacy analysis of birth and marriage information allegedly available from other government agencies and commercial sources. The parties dispute the extent of this public information. On remand, the parties should address in particular the availability, from other sources, of private information that a comparison of indices may reveal.
We also cannot determine the impact on the privacy analysis of DPH's two annual reports and the "aggregate marriage data" that DPH makes "available by request." It is unclear from the record whether the reports and aggregate marriage data contain identifying information, such as names or other details that can be linked to individuals.[19] Cf. Boston Retirement Bd., 388 Mass. at 438, 446 N.E.2d 1051 ("release of the [requested records], even without other particular identifying details, creates a grave risk of indirect identification"). If the reports and aggregate data do not include identifying information, then their existence does not reduce the privacy interest in the requested indices. If they do include identifying information, and if they include much or all of the data requested here, then the privacy interest in the requested indices will be significantly reduced. See Police Comm'r of Boston, 419 Mass. at 860, 648 N.E.2d 419 ("considerable amount of prior disclosure ...
**446 seriously compromised any privacy interests"). Cf. United States Dep't of State v. Ray, 502 U.S. 164, 176, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) ("Although disclosure of ... personal information constitutes only a de minimis invasion of privacy when the identities ... are unknown, the invasion of privacy becomes significant when the personal information is linked to particular [individuals]"). The parties should *143 clarify on remand the scope of the reports and the aggregate marriage data.
iii. Risk of identity theft and fraud. DPH contends, and the judge decided, that disclosing the requested information would pose a risk of identity theft and fraud. This risk is a proper case-specific factor in the privacy analysis. Cf. PETA, 477 Mass. at 295, 76 N.E.3d 227 ("personal safety" may be considered in privacy analysis). Cf. also Sherman v. United States Dep't of the Army, 244 F.3d 357, 365 (5th Cir. 2001) ("we are comfortable measuring the scope of the privacy interest in a [Social Security number] in terms of the dire consequences of identity theft and other forms of fraud"). However, the record does not support the judge's decision. Cf. Doe v. Registrar of Motor Vehicles, 1 Mass. L. Rep. 156, 158, 1993 WL 496590 (1993) ("Plaintiff introduced expert testimony regarding the potential privacy concerns of making universal identifiers such as birth date publicly available"). The judge, not unreasonably, seems to have used mainly common sense to reach her conclusion. But we decline to take judicial notice of an issue as technologically complex as identity theft and fraud.
This is especially so because the risk of identity theft may factor into the privacy analysis only if DPH "can identify specific information demonstrating that a significant risk [of such theft] ... is posed by the disclosure." PETA, 477 Mass. at 295, 76 N.E.3d 227 (discussing "significant risk to an individual's personal safety"). A fact-intensive inquiry such as this should be resolved through an adversarial proceeding before a fact finder. Moreover, the Globe suggests there is evidence that the Legislature and this court, in our capacity as a rulemaking body, do not perceive the requested information as posing a threat of fraud.
General Laws c. 93H, concerning security breaches, defines "[p]ersonal information" as "a resident's first name and last name or first initial and last name in combination with any [one] or more of the following data elements that relate to such resident: (a) Social Security number; (b) driver's license number or [S]tate-issued identification card number; or (c) financial account number, or credit or debit card number." G. L. c. 93H, § 1. The **447 requested indices include first and last names, but they do not include any of the other information listed in the statute.
The Globe points also to S.J.C. Rule 1:24 (2016). "This rule is intended to prevent the unnecessary inclusion of certain personally identifying information in publicly accessible [court] documents ... to reduce the possibility of," amongst other things, "identity theft." SJC Rule 1:24, § 1. "Personal identifying information" is defined as "a [S]ocial [S]ecurity number, taxpayer identification number, driver's license number, [S]tate-issued identification card number, ... passport number, a parent's birth surname if identified as such, a financial account number, or a credit or debit card number." SJC Rule 1:24, § 2. Of all these options, the requested indices might reveal only a parent's surname. Although G. L. c. 93H and SJC Rule 1:24 are not dispositive, they provide another reason to avoid resolving the fraud inquiry without a firm factual record.
iv. Unwanted intrusions. As DPH contends, it may be that the requested indices could result in "unwanted solicitations and intrusions" when combined with street addresses and telephone numbers readily available from telephone books. Cf. Painting Indus. of Haw. Mkt. Recovery Fund v. United States Dep't of the Air Force, 26 F.3d 1479, 1483 (9th Cir. 1994) ("invasion of privacy ... can result from release of a list of names and addresses coupled with a *144 characteristic susceptible to commercial exploitation"). DPH points out that disclosing the indices could result in "unwanted solicitations based on age, such as schemes that target senior citizens." See Registrar of Motor Vehicles, 26 Mass. App. Ct. at 426, 528 N.E.2d 880 (where individual's street address, make and year of automobile, and age are disclosed, "such a person, particularly one of advanced years, may become the target of those who would like to share in his or her wealth"). "Similarly, parents ... could be targeted for [children's] products ... [,] and married couples solicited on their wedding anniversaries." However, the extent to which information in the indices could lead to unwanted solicitations is not apparent from the record, and we decline to take judicial notice of the complexities of commercial advertising. The parties may produce further evidence on this point on remand.
When addressing on remand the issues of identity theft and unwanted intrusions, the judge should keep in mind that courts and agencies do not consider the requester's intent when ruling on public records requests. See G. L. c. 66, § 10 (d ) (viii) ("records **448 access officer may not require the requester to specify the purpose for a request, except to determine whether the records are requested for a commercial purpose or whether to grant a request for a fee waiver"). See also Globe Newspaper Co. v. Commissioner of Educ., 439 Mass. 124, 133 n.13, 786 N.E.2d 328 (2003) ("there is no requirement in the statute that a reason or justification is necessary or must be given to access public records[,] and we do not perceive any other basis for such a requirement" [alteration omitted] ). Even if the Globe asserts that it will neither publish the requested indices nor use them for commercial or malicious ends, a different requester might use the information differently. If the requested indices are available as a matter of law to the Globe, then they must be available to everyone.
b. Public interest in disclosure. If the judge concludes on remand that there is a privacy interest in the requested indices, then the judge must weigh the privacy interest in nondisclosure against any public interest in disclosure that the Globe articulates. PETA, 477 Mass. at 291-292, 76 N.E.3d 227. Because our cases do not precisely define public interest, we take the opportunity to do so here. On remand, the judge should apply that definition and make further factual findings where appropriate.
The judge, quoting Collector of Lynn, 377 Mass. at 158, 385 N.E.2d 505, and Registrar of Motor Vehicles, 26 Mass. App. Ct. at 425, 528 N.E.2d 880, stated that "[t]he public's interest is usually limited to its interest 'in knowing whether public servants **449 are carrying out their duties in an efficient and law-abiding manner.' ... In the circumstances of this case, however, the public's interest in disclosure also includes [the ']negative public interest' in making the compiled personal data of so many individuals available electronically for public scrutiny." Although the judge's definition of public interest has ample support in the case law, we think it is both too narrow and too broad.
We already have observed in this opinion that the privacy interest in a requested record may increase if the record implicates many individuals. To allow the existence of a large number of potentially affected individuals to reduce the public interest in disclosure would give that factor undue weight. Therefore, we decline to consider on the public interest side of the scale any "negative public interest in placing the private affairs of ... many individuals" into the public domain.
*145 Registrar of Motor Vehicles, 26 Mass. App. Ct. at 425, 528 N.E.2d 880.
We also disagree with the judge that the only other relevant public interest is the interest "in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner." Collector of Lynn, 377 Mass. at 158, 385 N.E.2d 505. As the Globe argues, other public interests may be considered.
Although nothing in the plain language of exemption (c ) requires that the public interest be limited to the interest in government operations,[20] our jurisprudence has often limited the public interest in this manner. See PETA, 477 Mass. at 292, 76 N.E.3d 227 ("public has a recognized interest in knowing whether public servants are carrying out their duties in a law-abiding and efficient manner"); Hastings & Sons Publ. Co., 374 Mass. at 818-819, 375 N.E.2d 299 ("paramount right of the public to know what its public servants are paid must prevail.... Such knowledge could significantly add to the citizen's understanding of the government's operations" [citation omitted] ); Antell v. Attorney Gen., 52 Mass. App. Ct. 244, 247, 752 N.E.2d 823 (2001) ("public interest in disclosing allegations of official misconduct").
However, the parties have not pointed to, and we have not found, any published Massachusetts case that expressly limits the public interest analysis. In fact, Massachusetts courts have considered public interests other than the interest in government operations. See Matter of a Subpoena Duces Tecum, 445 Mass. 685, 689, 840 N.E.2d 470 (2006) ("public's interest in disclosing the videotaped interviews of the plaintiffs to their attorneys"); Registrar of Motor Vehicles, 26 Mass. App. Ct. at 418 n.7, 528 N.E.2d 880 ("public purpose in providing injured members of the public with accurate information as to the owners and operators of automobiles and in making such data readily available"); Cunningham v. Health Officer of Chelsea, 7 Mass. App. Ct. 861, 862, 385 N.E.2d 1011 (1979) ("matters of public concern" include "quality of residential housing").
**450 The United States Supreme Court has said, with regard to a FOIA balancing test similar to the one required by exemption (c ), that the public interest must relate to government operations. See Bibles v. Oregon Natural Desert Ass'n, 519 U.S. 355, 355-356, 117 S.Ct. 795, 136 L.Ed.2d 825 (1997) (per curiam), quoting Federal Labor Relations Auth., 510 U.S. at 497, 114 S.Ct. 1006 ("the only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to" [quotations and alteration omitted] ). The Court has so held because *146 "the core purpose of the FOIA ... is contributing significantly to public understanding of the operations or activities of the government" (quotations, alteration, and emphasis omitted). Federal Labor Relations Auth., supra at 495, 114 S.Ct. 1006, quoting Reporters Comm. for Freedom of the Press, 489 U.S. at 775, 109 S.Ct. 1468. Similarly, we have recognized that our public records law "expresses the Legislature's considered judgment that '[t]he public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner.' " Suffolk Constr. Co. v. Division of Capital Asset Mgt., 449 Mass. 444, 453, 870 N.E.2d 33 (2007), quoting Collector of Lynn, 377 Mass. at 158, 385 N.E.2d 505.
But public records laws serve an important purpose in addition to shining sunlight on government operations. Indeed, we have articulated a wide-ranging "dominant purpose" for our own law: "to afford the public broad access to governmental records." Boston Retirement Bd., 388 Mass. at 436, 446 N.E.2d 1051. See Harvard Crimson, Inc. v. President & Fellows of Harvard College, 445 Mass. 745, 749, 840 N.E.2d 518 (2006). Contrast Reporters Comm. for Freedom of the Press, 489 U.S. at 772, 109 S.Ct. 1468, quoting Environmental Protection Agency v. Mink, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973) ("In our leading case on the FOIA, we declared that the Act was designed to create a broad right of access to 'official information' ").[21] This purpose is served by the **451 statutory presumption "that each record sought is public." G. L. c. 66, § 10A (d ) (1) (iv).
Information is the bread and butter of democracy, and the government is in a unique position to collect and aggregate information from which the public may benefit. As the request in this case demonstrates, reporters, scholars, and others seek to use this information to learn and teach. See Statement on World Press Freedom Day, 1 Pub. Papers of the Presidents 607 (2010) (then President Barack H. Obama recalling "the words of Thomas Jefferson: 'The basis of our governments being the opinion of the people, the very first object should be to keep that right; and were it left to me to decide whether we should have a government without newspapers or newspapers without a government, I should not hesitate a moment to prefer the latter' ").
To ensure that the public-private balancing test reflects the various uses to which government information may be put, we conclude that where a requester articulates with specificity a public interest, even one unrelated to government operations, "that non-dispositive factor can add weight *147 to whatever [public] interest exists on that side of the balancing test." PETA, 477 Mass. at 295, 76 N.E.3d 227. In applying this rule, judges should remember that, when analyzing the public interest in disclosure, we do not consider who is framing that public interest. See Pottle, 395 Mass. at 866 n.6, 482 N.E.2d 813. Cf. Cameranesi v. United States Dep't of Defense, 856 F.3d 626, 639-640 (9th Cir. 2017) ("In considering whether the public interest is significant, ... [w]e do not give weight to the FOIA requester's personal interest in obtaining information").
On remand, the judge should consider all the Globe's arguments for why disclosure would be in the public interest. For instance, the Globe argues in its brief that disclosure "would assist in identifying individuals in news reports, ferreting out voter fraud, and studying birth and marriage trends." The judge also should make further findings with respect to the public interest argument already considered in the Superior Court, namely, the Globe's "contention that access [to the requested **452 indices] would provide a check on whether the registry is properly recording births and marriages."
Where the government withholds a record pursuant to exemption (c ), a requester may not simply proffer a public interest in general terms. "First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest." Favish, 541 U.S. at 172, 124 S.Ct. 1570. Where "the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred." Id. at 174, 124 S.Ct. 1570.
The Globe articulated a specific public interest, namely, "whether the [r]egistry is properly recording" vital records. It also produced evidence that the registry might not be doing its job correctly: the parties agreed in the Superior Court that, according to a 2010 State audit, the registry "lacked certain controls for its computer databases." However, the parties dispute whether the requested indices could reveal errors in the registry databases. The Globe argued below that "[b]y analyzing the database, [it] could calculate the number of certificates recorded each year and in each town and compare that with [c]ensus data and other records to search for any discrepancies." DPH disagreed, arguing that because "the ind[ic]es would not include restricted information, ... there will be a discrepancy between the [c]ensus data and the number of listings in the ind[ic]es." The judge did not reach the issue whether the Globe could use the census or other data as a comparison for the requested indices.[22] This issue should be addressed on remand.
**453 *148 Conclusion. With respect to exemption (a ), on remand the judge should make factual findings about the extent to which the indices requested here could be compared against later-requested indices to reveal information protected from public disclosure by statute. The judge should then determine whether the risk of revealing such information brings the requested indices within the scope of exemption (a ).
With respect to exemption (c ), on remand the judge should first decide the extent to which the indices requested here could be compared against later-requested indices to reveal medical information absolutely exempt from the public records law. If necessary, the judge should then decide whether there is a privacy interest in the requested indices. To do so, the judge should make further findings on (1) the extent to which multiple indices could be compared to reveal private information; (2) whether the requested compilation is already available in the aggregate form requested or, if not, the ease with which it can be assembled from public information; (3) whether DPH has shown that releasing the indices could pose a risk of identity theft or fraud; and (4) the extent to which the indices could facilitate unwanted intrusions.
If there is a privacy interest in the requested indices, then the judge should decide whether the public interest in disclosure substantially outweighs the privacy interest. To do so, the judge should make further findings on (1) whether the Globe could use the indices to learn about government by scrutinizing whether DPH is properly recording births and marriages, and (2) whether releasing the indices could serve public interests other than the interest in learning about government.
For the foregoing reasons, the ruling on the parties' cross motions for summary judgment is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.
So ordered.

In this opinion, a "compilation" refers to a record that combines individual pieces of information. Each of these individual pieces of information is "discrete." For example, a telephone book is a compilation. Each telephone number, address, and name in the telephone book is discrete information.

We acknowledge the amicus brief submitted by Reporters Committee for Freedom of the Press, the editorial staff of The Tech, Metro Corp., New England Center for Investigative Reporting, New England First Amendment Coalition, New England Newspaper and Press Association, The New York Times Company, North of Boston Media Group, and the editorial staff of The Free Press.

It appears that the public computer databases now include information about more recent births. If the judge on remand decides that the Globe is entitled to the requested indices, then DPH should provide the Globe with "the most up-to-date" information available on its public computers as determined by the judge, pursuant to the Globe's request.

It seems that some of this information was available only for births from 1953 to 1986, the information for which was kept in a separate database (WebTop database) when the stipulated facts were filed. The stipulated facts specify that the middle name is available only for births in this period. And gender is mentioned as a search criterion only for 1953-1986 birth records. In other respects, the scope of the 1953-1986 records is unclear. From the stipulated facts, there seem to be two levels of detail in the WebTop database: a preliminary data set appears first, then "[a] user can click on the item ... and ... see the full birth certificate with more detailed information." However, DPH has "dispute[d] any implication that the public can inspect or obtain copies of birth or marriage certificates from the public" computers. Further complicating matters is the recent upgrade of the databases, see note 3, supra, which resulted in the 1953-1986 birth records being merged with more recent records into a single database. As discussed infra, the precise information being requested is important to the application of exemption (a ) and exemption (c ). The parties should clarify on remand which birth and marriage information would be included in the requested indices.

The presumption of disclosure language in the public records law was rewritten between the time of the records request and the decision on the motions for summary judgment. See St. 2016, c. 121, § 10, inserting G. L. c. 66, § 10A. Prior to 2016, the presumption was set forth in G. L. c. 66, § 10 (c ), as amended through St. 2010, c. 256, §§ 58-59 ("there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies"). The motion judge applied the statute as it existed at the time of the records request. However, applying the amended statute makes sense because if an appellate court holds under an old version of the public records law that requested information may be withheld, then the requester may simply refile a request under the amended law. Cf. Massachusetts Outdoor Advertising Council v. Outdoor Advertising Bd., 9 Mass. App. Ct. 775, 777, 405 N.E.2d 151 (1980) ("it is a function of declaratory proceedings to guide the future conduct of parties"). Therefore, we apply the current version of the public records law and of all other statutes relevant to our decision.

The Globe is requesting only information that DPH has already made available on its public computers. Under the Federal Freedom of Information Act (FOIA), an agency's disclosure of information will under certain circumstances prevent the agency from later withholding that information in response to a public records request. See, e.g., American Civ. Liberties Union v. United States Dep't of Defense, 628 F.3d 612, 620-621 (D.C. Cir. 2011), and cases cited. This waiver doctrine seems to have received only brief mention in our case law. See General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 806, 711 N.E.2d 589-807 (1999), overruled on other grounds by DaRosa v. New Bedford, 471 Mass. 446, 30 N.E.3d 790 (2015) ; Globe Newspaper Co. v. Police Comm'r of Boston, 419 Mass. 852, 861 n.11, 863, 648 N.E.2d 419 (1995). Because the parties have not briefed the waiver issue, we decline to apply it here. The parties may address it on remand.
Another relevant point not raised by the parties is the impact of a statute that expanded the definition of "[p]ublic records," set forth in G. L. c. 4, § 7, Twenty-sixth, but also restricted its application by adding exemptions, including exemptions (a ) and (c ). See St. 1973, c. 1050, § 1. See also Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 152-153, 385 N.E.2d 505 (1979) (describing how 1973 amendments changed definition of public records). According to the 1973 act, the amendments "shall not be construed to exempt any record which was a public record on the effective date of this act," which was July 1, 1974. St. 1973, c. 1050, §§ 6, 7. Thus, if a record existed on or before July 1, 1974, and if it was a public record as that term was then defined, then it remains a public record even if it falls within an exemption added by St. 1973, c. 1050, § 1. It is not the case, despite what the Appeals Court has suggested, that all records that would have been considered public under the pre-1974 definition, including those created after July 1, 1974, are still public records now even if they fall within an exemption. See Doe v. Registrar of Motor Vehicles, 26 Mass. App. Ct. 415, 419 & n.9, 528 N.E.2d 880 (1988). Therefore, if a record was made after July 1, 1974, then a court should not consider whether it would have been public under the pre-1974 definition. Here, we need not decide whether the requested indices would have been considered public records under the earlier definition because the registry's public databases were not created until the 1980s or later.

Although DPH contends otherwise, statutory restrictions on certified copies of vital records are irrelevant here. See G. L. c. 46, §§ 16, 18, 19, 19A, 19C, 32, 33, 34. These restrictions seem to demonstrate the Legislature's concern with fraudulent birth and marriage certificates, not with birth and marriage information released in a format that does not emulate a certified copy.

"Upon the birth of any child, the ... person in charge of a hospital, or any other person responsible for reporting a birth ... shall forward to the commissioner [of public health (commissioner) ] any information ... as required by the commissioner for administrative, research and statistical purposes .... Such data that is included in the certificate of birth shall be transmitted within ten days of the birth of the child and shall not constitute a public record and shall not be available except for the foregoing purposes" (emphasis added). G. L. c. 111, § 24B.

Our reasoning with respect to G. L. c. 111, § 24B, may be complicated by DPH regulations not addressed by the parties. See 105 Code Mass. Regs. §§ 305.000 (2007). Those regulations suggest that (1) birth data sent to the Commissioner pursuant to § 24B go through the Registry, see 105 Code Mass. Regs. § 305.020 ; and (2) § 24B does not contemplate the sort of information requested here, see 105 Code Mass. Regs. § 305.004 (defining "[c]onfidential [b]irth [i]nformation"). The parties may address these regulations on remand.

"Upon request of the chair[ ] of the local board of health, [each] town clerk shall file daily with the local board of health a list of all births reported to [the clerk], showing as to each, the date of birth, sex, name of the child, names of the parents, their residence and the name of the physician or officer in charge. Such list shall not be a public record" (emphasis added). G. L. c. 46, § 4A, second par.

The Legislature also has added certain birth and marriage information to the public records law. See St. 1983, c. 374, § 2 ("copies [maintained by the Secretary of State] and all original records of birth, marriage and death on file in the office of the city and town clerks ... for [1841-1890], inclusive, shall be maintained as public records in accordance with [G. L. c. 66]"). We do not interpret such language as demonstrating an intent to exclude from the public records law other birth and marriage information. The statutory definition of public records includes specified government documents unless an exemption applies. See G. L. c. 4, § 7, Twenty-sixth.

"Examination of records and returns of children born out of wedlock or abnormal sex births, or fetal deaths, ... or of copies of such records in the department of public health, shall not be permitted except upon proper judicial order, or upon request of a person seeking his own birth or marriage record, or his attorney, parent, guardian, or conservator, or a person whose official duties, in the opinion of the town clerk or the commissioner ..., ... entitle him to the information contained therein, nor shall certified copies thereof be furnished except upon such order, or the request of such person." G. L. c. 46, § 2A.

The restricted records may be examined "upon proper judicial order." G. L. c. 46, § 2A. We do not read this language to include a judicial order enforcing a public records request. Such an interpretation would contravene § 2A's purpose of protecting certain records from public inspection. Cf. Globe Newspaper Company, Inc., petitioner, 461 Mass. 113, 123, 958 N.E.2d 822 (2011) (creating rule "necessary to fulfil the legislative purpose in ... statutory impoundment").

A comparison also could occur without a second index. Someone could search for a particular individual's information in the registry's public database and compare the results against an earlier index.

DPH has provided information suggesting that an examination of who is absent from an index would not necessarily reveal information protected by G. L. c. 46, § 2A, because there are other reasons why someone's name might be missing. The parties should address this issue on remand.

Town clerks must collect birth and marriage information, G. L. c. 46, § 1, and provide that information to the registry, G. L. c. 46, §§ 17 (births), 17A (marriages).

We agree with the judge that "[i]t is a close[ ] question whether the information" on the face of the indices is highly personal and intimate. Compare People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 292 n.13, 76 N.E.3d 227 (2017), quoting Attorney Gen. v. Assistant Comm'r of the Real Prop. Dep't of Boston, 380 Mass. 623, 626 n.2, 404 N.E.2d 1254 (1980) (" 'intimate details' may include 'marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcohol consumption, family fights, [and] reputation' "), with United States Dep't of State v. Washington Post Co., 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) ("Information such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal"). We do not resolve this issue where the judge may find on remand that comparing indices reveals information that is plainly intimate and highly personal.

When the stipulated facts were filed in the Superior Court, a researcher could obtain short lists by typing letters into the databases' search field. For instance, "by typing in the letters 'AA' ... one [was] able to view and scroll through a list of names" beginning with those letters. It would be insuperable using this method to obtain the information for everyone in the databases, especially because "[u]sers cannot print the results of their search queries" and because the databases are available only eleven hours per week. Additionally, in a letter to the court, DPH represented that it is now even harder to collect data on multiple individuals using the databases: "The system no longer permits 'wild card' searches, wherein a user could input only the first few letters of a last name, and obtain results for multiple names that begin with those few letters." The Globe has not addressed this new search system, and our decision does not rest upon it. Both systems present fragmented information that may well be impossible to aggregate manually. Considering the amount of entries in the databases, our conclusion is not affected by the Globe reporter's statement in his declaration that he was able to "create[ ] two spreadsheets with the first few dozen entries in the marriage and birth ind[ic]es in about fifteen to twenty minutes, respectively."

According to the stipulated facts, the annual birth report "presents detailed data on the number and characteristics of Massachusetts births recorded in the [r]egistry," and the vital statistics annual report "includes marriage and divorce counts."

Admittedly, the public records statute itself equates public interest with learning about government. The statute allows for fee waiver or reduction where "disclosure of a requested record is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester" (emphasis added). G. L. c. 66, § 10 (d ) (v). The United States Supreme Court cited a nearly identical FOIA provision to support its conclusion that the only relevant public interest is in learning about the government. United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). But the Court also acknowledged that "such a provision ... implies that there will be requests that do not meet such a 'public interest' standard." Id. Moreover, the statute's use of the word "because" suggests there are public interests other than the one described. A different provision in the same statute identifies another such interest, namely, "the public interest served by limiting the cost of public access to the records." G. L. c. 66, § 10 (d ) (iv) (1).

To a certain extent, the Legislative history of the modern version of the public records law suggests that the statute's purpose is to learn about government. See Collector of Lynn, 377 Mass. at 152-153, 385 N.E.2d 505 (describing shift in orientation of public records law from limited disclosure to modern scheme of presumed disclosure). A legislative proposal not enacted contained a statement of findings that emphasized discovering what the government is up to: the General Court "declare[d] that it is a fundamental right of a citizen to know what his government is doing and thus, to have free and open access to most of the official papers and records of his government. It is ... the purpose of this act to clarify, and to provide effective remedies for, this right." 1973 House Doc. No. 1127. This language does not change our analysis. It was not included in later proposals or in the law that was enacted, 1973 House Doc. No. 7310; St. 1973, c. 1050, and, as discussed in the text, we previously have acknowledged a broader purpose for the statute. Cf. Commonwealth v. Hendricks, 452 Mass. 97, 100-101, 891 N.E.2d 209 (2008), S.C., Hendricks v. Commonwealth, 453 Mass. 1001, 899 N.E.2d 95 (2009) (declining to rely on findings in statute's preamble where "plain language of the statute enacted sweeps more broadly").

Instead, the judge emphasized that "the Globe ... could conduct its research using other available means," namely, two annual reports published by DPH and "aggregate marriage data available by request." However, in Collector of Lynn, 377 Mass. at 158 n.6, 385 N.E.2d 505, we rejected an argument that "the public interest in disclosure [of lists of tax delinquents] is minimal because a collector is required by statute eventually to publish his delinquent accounts." We concluded that "the public has an interest in knowing whether the collector complies with the spirit and letter of these statutory requirements." Id. Here, even if the publications mentioned by the judge provide the same information as the requested indices, cf. Hastings & Sons Publ. Co. v. City Treas. of Lynn, 374 Mass. 812, 819, 375 N.E.2d 299 (1978) ("General salary schedules, obtainable from publication of the collective bargaining agreement, would not provide the details sought by the plaintiff"), there is a public interest in knowing whether the data DPH publishes and compiles upon request is accurate.