APPEALS COURT 
 
 CITY OF SOMERVILLE vs. SUPERVISOR OF PUBLIC RECORDS OF THE COMMONWEALTH

 
 Docket:
 24-P-398
 
 
 Dates:
 May 12, 2025 - September 17, 2025
 
 
 Present:
 Singh, D'Angelo, & Hodgens, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Motor Vehicle, Parking. Permit. Public Records. Municipal Corporations, Public record. Supervisor of Public Records. Privacy. Statute, Construction. Practice, Civil, Judgment on the pleadings
 
 

             Civil action commenced in the Superior Court Department on July 6, 2015.
            Motions for judgment on the pleadings, filed on January 18, 2023, were heard by Sarah Weyland Ellis, J.
            David P. Shapiro, Deputy City Solicitor, for the plaintiff.
            Michael J. Kerrigan, Special Assistant Attorney General, for the defendant.
            HODGENS, J.  A Boston Globe reporter (Globe) submitted public records requests for residential parking permit data held by the plaintiff, the city of Somerville (city).  After the city agreed to produce some data but declined to produce other data including the names and addresses of permit holders and vehicle descriptions, the Globe sought enforcement of the public records law through the defendant, the supervisor of public records of the Commonwealth (supervisor).  The supervisor required the city to produce all records requested by the Globe.  After the city challenged the supervisor's decision by filing a complaint in the Superior Court, and after additional proceedings, a judge ordered the city to produce the names and addresses of permit holders but also allowed the city to redact vehicle descriptions.  The city appeals from that portion of the amended judgment requiring the disclosure of names and addresses.  We affirm.
            Background.  The city issues residential parking permits to those who file an application, meet certain eligibility requirements, and pay a fee.  On October 2, 2014, the Globe submitted a written request to the city seeking "the city's electronic list of residential parking permits," including "the permit number, issue date, expiration date, vehicle model/make/year, license plate number, email, first name, last name, address, zip code, [and] phone numbers."  The city responded that it would provide the information and would redact "the first name, last name, address, zip code, phone numbers and email addresses of the permit holders" in accordance with G. L. c. 4, § 7, Twenty-sixth (a) (statutory exemption), and G. L. c. 4, § 7, Twenty-sixth © (privacy exemption), under G. L. c. 66, § 10 (the public records law).  Dissatisfied with the proposed redactions, the Globe sought enforcement of the public records law through the supervisor, who sided with the Globe and required the city to produce all the requested records.  On July 6, 2015, the city challenged the supervisor's decision by filing its complaint in the Superior Court.
            With that complaint pending, on April 21, 2017, the Globe submitted to the city a second public records request regarding the parking permits and withdrew the first request.  The second request sought "the permit number, issue date, expiration date, vehicle model/make/year, license plate number, first name, last name, address, and zip code."  Notably, unlike the first request, the second request did not ask for the phone numbers and e-mail addresses of permit holders.  In correspondence to the city, the Globe emphasized that the requested information would facilitate its analysis of how the city allocates scarce public parking spaces among its residents.  As it had done with the first request, the city offered "to produce redacted copies of the documents."  The supervisor again sided with the Globe.
            Considering this second records request as the operative document, a judge entered a partial judgment on the pleadings on December 20, 2019, affirming the supervisor's decision in part and remanding the matter for her reconsideration.  The judge concluded that the statutory exemption did not apply because the reach of the Driver's Privacy Protection Act of 1994 (DPPA), 18 U.S.C. § 2721(a)(1), prohibiting disclosure of "personal information . . . in connection with a motor vehicle record" is limited to "[a] State department of motor vehicles, and any officer, employee, or contractor thereof" and does not include a municipality.  The judge declined to address the scope of the privacy exemption and afforded the supervisor a chance to revisit her position in light of a recent decision in Boston Globe Media Partners, LLC v. Department of Pub. Health, 482 Mass. 427 (2019).
            The supervisor reconsidered and on March 12, 2020, asked the city and the Globe for more information.  That same day, the city responded that it would rely on "the existing record."  The Globe presented additional information.  On May 11, 2022, the supervisor issued a letter declining to change her prior decision with respect to the privacy exemption.  On August 18, 2022, the city filed a motion to "reopen" the Superior Court case.  The motion was allowed without opposition.
            The city and the supervisor filed cross motions for judgment on the pleadings.  On May 16, 2023, a second judge issued a judgment ordering the city to produce the permit numbers, dates of issue, and permit holders' names, addresses, and zip codes, but based on the privacy exemption allowed the city to redact their vehicle makes, models, years, and license plate numbers.  The city appealed.  Neither party raises any argument with respect to the production of the permit numbers and dates of issue or the redactions authorized by the second judge.  The only issue on appeal is whether the names and addresses (including zip codes) of the permit holders must be produced by the city.
            Discussion.  A judgment on the pleadings "is designed to cover the rare case where the answer admits all the material allegations of the complaint (or the reply admits all the allegations of the counterclaim) so that no material issue of fact remains for adjudication."  Reporter's Notes to Rule 12, Massachusetts Rules of Court, Rules of Civil Procedure, at 24 (Thomson Reuters 2025).  We apply de novo review to a decision on cross motions for judgment on the pleadings.  Reilly v.  Hopedale, 102 Mass. App. Ct. 367, 377 (2023).
            "The primary purpose of [the public records law] is to give the public broad access to governmental records."  Worcester Tel. & Gazette Corp. v. Chief of Police of Worcester, 436 Mass. 378, 382-383 (2002).  The Legislature defines "[p]ublic records" to include all "documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the [C]ommonwealth, or of any political subdivision thereof."  G. L. c. 4, § 7, Twenty-sixth.  While the definition of a public record is broad, not every record kept or made by a governmental agency is subject to public disclosure.  As of the date of this opinion, the Legislature has identified twenty-two categories of information that are exempt from disclosure.  St. 2024, c. 363, § 1 (effective April 8, 2025).  See G. L. c. 4, § 7, Twenty-sixth (a)-(w) (there is no subclause [k]).  Here we address the statutory exemption, G. L. c. 4, § 7, Twenty-sixth (a), and the privacy exemption, G. L. c. 4, § 7, Twenty-sixth ©, as they relate to the public disclosure of the names and addresses of the permit holders.
            a.  Statutory exemption.  A custodian may withhold a record from public view if a statute provides that the record sought would be "specifically or by necessary implication exempted from disclosure."  G. L. c. 4, § 7, Twenty-sixth (a).  The city now appears to concede that the DPPA, standing alone, does not provide an exemption in the circumstances presented.
            This concession is appropriate because the DPPA is very limited in its application and does not provide an exemption here.  First, the DPPA's prohibition on disseminating personal information connected to a motor vehicle record is directed at a "State department of motor vehicles," not a city such as Somerville.  18 U.S.C. § 2721(a)(1).  See Reno v. Condon, 528 U.S. 141, 143 (2000) ("DPPA regulates the disclosure and resale of personal information contained in the records of state DMVs").  Second, the information protected by the DPPA must be related to a "motor vehicle record," id. at 144, defined narrowly as "pertain[ing] to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," 18 U.S.C. § 2725(1).  Even if the city has collected information from parking permit holders that also by happenstance coincides with information maintained in a database held by an agency regulating motor vehicles, we do not believe that such a tenuous link creates an exemption by "necessary implication" under G. L. c. 4, § 7, Twenty-sixth (a).  See Rahim v. District Attorney for the Suffolk Dist., 486 Mass. 544, 550-551 (2020) (Federal statute prohibiting Federal Bureau of Investigation from disclosing information did not bar State district attorney from disclosing same information under exemption [a]).  We agree with the city, however, that even if the DPPA cannot be a basis for a statutory exemption, the policy underlying the DPPA may still be considered as a factor in evaluating the existence of a privacy exemption.
            b.  Privacy exemption.  The privacy exemption applies to "personnel and medical files or information and any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."  G. L. c. 4, § 7, Twenty-sixth ©.  The word "unwarranted" in the statute "particularly suggests a weighing of the circumstances of the data subject -- a balancing of the public's right to know as reflected in the Commonwealth's public records law, and the individual's right to protection against an unwarranted intrusion into his privacy."  Torres v. Attorney Gen., 391 Mass. 1, 9 (1984).  "On one side of the scale, we have looked to three factors to assess the weight of the privacy interest at stake:  (1) whether disclosure would result in personal embarrassment to an individual of normal sensibilities; (2) whether the materials sought contain intimate details of a highly personal nature; and (3) whether the same information is available from other sources" (footnote omitted).  People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 292 (2017).  "[O]ther case-specific relevant factors" may also be considered.  Globe Newspaper Co. v. Police Comm'r of Boston, 419 Mass. 852, 858 (1995).  On the other side of the scale, we examine the weight of the public interest in obtaining the information sought.  See People for the Ethical Treatment of Animals, Inc., supra at 291-292.  "Where the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy, the private interest in preventing disclosure must yield to the public interest."  Champa v. Weston Pub. Sch., 473 Mass. 86, 96 (2015), quoting Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 156 (1979).  Based on this balancing of interests, we conclude that disclosure of the names and addresses of the permit holders is not barred by the privacy exemption.
            Applying these factors to the record, we discern a minimal privacy interest at stake.  See People for the Ethical Treatment of Animals, Inc., 477 Mass. at 292 (discernible privacy interest in name and residential address).  While bare names and addresses possess no intrinsic quality that would cause embarrassment or expose intimate details of a highly personal nature, we must also examine the "expectations of the data subject" to determine "whether disclosure of information might be an invasion of privacy."  Torres, 391 Mass. at 9.  Depending on the circumstances of the creation and content of the record at issue, "the same information about a person, such as his name and address, might be protected from disclosure as an unwarranted invasion of privacy in one context and not in another."  Id.  There is nothing in the record here to suggest that permit holders had a particular expectation of privacy when transacting business with the city.  While we appreciate that some permit holders may naturally shun publicity, such a general desire does not bar disclosure of a public record.  See, e.g., Hastings & Sons Publ. Co. v. City Treas. of Lynn, 374 Mass. 812, 817, 821 (1978) (privacy exemption does not bar municipality from disclosing "name, address, base pay, overtime pay, miscellaneous payments, and gross pay of individual municipal employees"); Collector of Lynn, 377 Mass. at 157 (privacy exemption does not bar municipality from disclosing "records of real estate tax delinquents").  We also note that names and addresses of the residents are readily available from street lists and voter lists, thereby reducing "the gravity of any putative invasion of privacy."  People for the Ethical Treatment of Animals, Inc., supra at 294.  See Pottle v. School Comm. of Braintree, 395 Mass. 861, 866 (1985) ("street lists, which are publicly available, contain, inter alia, the names, residential addresses, and occupations of the persons listed").  This is not a situation where the disclosure of names and addresses also discloses information considered private, such as an application for public assistance.  See, e.g., Torres, supra at 8 (record in "connection with obtaining government services or benefits would normally be regarded as an invasion of privacy"); Georgiou v. Commissioner of the Dep't of Indus. Accs., 67 Mass. App. Ct. 428, 436 (2006) (record contains "names and addresses, conjoined with their known disabled status").
            On the other side of the scale, we discern a weighty public interest in obtaining the information sought.  Implicit in the existence of the parking permit program is a recognition that access to parking spaces in an urban setting, like Somerville, is valuable.  Spaces are limited, and permits are supposed to be issued to residents in accordance with rules and regulations established by the city.  If darkness prevails about who ultimately obtains these valuable permits, the public will be unable to determine whether administration of the parking permit program comports with the governing municipal rules and regulations.  "The public has an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner."  Collector of Lynn, 377 Mass. at 158.  Shedding light on the administration of the permit process by disclosing the names and addresses of permit holders could, at a minimum, "significantly add to the citizen's understanding of the government's operations."  Hastings & Sons Publ. Co., 374 Mass. at 819.  See Boston Globe Media Partners, LLC, 482 Mass. at 449-450 (public interest is not limited to insuring efficient and lawful government operations but also includes achieving broad access to government records).
            Construing the privacy exemption narrowly, as we are required to do, see Globe Newspaper Co. v. District Attorney for the Middle Dist., 439 Mass. 374, 380 (2003), we conclude that the minimal privacy interest here is outweighed by "the paramount right of the public to know" the names and addresses of the permit holders.  Hastings & Sons Publ. Co., 374 Mass. at 818.  We are also cognizant of the risk posed by disclosing seemingly innocuous information that can become the "key to the castle" by aggregating it with other information to intrude on protected interests.  Attorney Gen. v. District Attorney for the Plymouth Dist., 484 Mass. 260, 272 n.9 (2020).  See Boston Globe Media Partners, LLC, 482 Mass. at 428 (there may be "greater privacy interest in a compilation of personal information").  Due to vigorous and successful advocacy by the city safeguarding the privacy interests of its residents, much of this risk will be mitigated by the redactions that will be made (vehicle makes, models, years, and license plate numbers) and are not now disputed by the supervisor.  See, e.g., Doe v. Registrar of Motor Vehicles, 26 Mass. App. Ct. 415, 426 (1988) ("When an individual's street address and make and year of automobile are known, much may be gleaned concerning his or her financial condition").  We are also aware that the DPPA and many other statutes seek to shield personal information from the public domain.  Our inquiry does not end there, however.  As the record in this case illustrates, we must also consider the substantial interest of every citizen "to satisfy himself with his own eyes as to the mode in which a public duty is performed."  Trustees of Boston Univ. v. Clerk-Magistrate of the Cambridge Div. of the Dist. Court Dep't, 495 Mass. 56, 67 (2024), quoting Eagle-Tribune Publ. Co. v. Clerk-Magistrate of the Lawrence Div. of the Dist. Court Dep't, 448 Mass. 647, 657 (2007).  The balance here must be struck in favor of disclosure of the names and addresses of permit holders.
Amended judgment affirmed.