NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11838


MICHAEL CHAMPA vs. WESTON PUBLIC SCHOOLS & others.[1]



Middlesex.     September 9, 2015. - October 23, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.



Public Records.  Municipal Corporations, Public record.  School
    and School Committee, Public record, Special education.
    Education, Special educational needs.  Individuals With
    Disabilities Education Act.  Family Educational Rights and
    Privacy Act.  Privacy.  Contract, Settlement agreement.



    Civil action commenced in the Superior Court Department on
November 14, 2012.

    The case was heard by Angel Kelley Brown, J., on motions
for judgment on the pleadings, and entry of final judgment was
ordered by her.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Doris R. MacKenzie Ehrens for the defendants.
    Peter F. Carr, II, for the plaintiff.


_____

    [1] The superintendent of Weston Public Schools and the
director of student services of Weston Public Schools.  We shall
refer to the defendants collectively as the "school district."

Mary Ellen Sowyrda, pro se, amicus curiae, was present but did not argue.

The following submitted briefs for amici curiae:

Maura Healey, Attorney General, & Peter Sacks, State Solicitor, for Department of Elementary and Secondary Education.

Stephen J. Finnegan for Massachusetts Association of School Committees, Inc.

Amy M. Rogers, Catherine L. Lyons, & Melissa A. Curran for Lyons & Rogers, LLC.

Robert E. McDonnell, Charles L. Solomont, Caitlin M. Snydacker, Peter G. Byrne, Matthew R. Segal, & Jessie J. Rossman for American Civil Liberties Union of Massachusetts.


BOTSFORD, J.  In this case, the question presented is whether settlement agreements between a public school and the parents of a public school student who requires special education services are "public records" or exempt from disclosure.  We conclude that the settlement agreements, regarding placement of students in out-of-district private educational institutions, are exempt from the definition of "public records" in G. L. c. 4, § 7, Twenty-sixth.  The agreements qualify as "education records" under 20 U.S.C. § 1232g (2012 & Supp. II 2014), known as the Family Educational Rights and Privacy Act (FERPA), and as such, fit within exemption (a) of the definition of "public records," G. L. c. 4, § 7, Twenty-sixth (a) (exemption [a]).  The settlement agreements also contain information that relates to specifically named individuals, the disclosure of which may qualify as an "unwarranted invasion of personal privacy," and therefore fit within exemption (c), G. L. c. 4, § 7, Twenty-sixth (c)

(exemption [c]).  We further conclude, however, that the settlement agreements may be redacted to remove personally identifiable information they contain, after which they become subject to disclosure under G. L. c. 66, § 10, the Massachusetts public records law.[2]

Background.[3]  The defendant Weston Public Schools (school district) is obligated to provide a free and appropriate public education to all students or school-age children with

---

[2] We acknowledge the amicus briefs submitted by the Department of Elementary and Secondary Education; American Civil Liberties Union of Massachusetts; Massachusetts Association of School Committees, Inc.; Lyons & Rogers, LLC; and Attorney Mary Ellen Sowyrda.  We note that Attorney Sowyrda is a partner in the law firm that represents the town in this case.  She is the head of the firm's special education group.  In these circumstances, her filing a separate brief, purportedly as an amicus, to make further arguments supporting the client's position, was ill-advised -- particularly as it appears from the record that Attorney Sowyrda participated in drafting the settlement agreement between the plaintiff and the town, and also represented the town earlier in this matter before the supervisor of public records.  See Aspinall v. Philip Morris Cos., 442 Mass. 381, 385 n.8 (2004) ("Briefs of amicus curiae are intended to represent the views of nonparties; they are not intended as vehicles for parties or their counsel to make additional arguments beyond those that fit within the page constraints of their briefs").  Cf. S.M. Shapiro, K.S. Geller, T.S. Bishop, E.A. Hartnett, & D. Himmelfarb, Supreme Court Practice § 13.14 (10th ed. 2013) (discussing disclosure requirements of United States Supreme Court Rule 37.6; suggesting that some amicus briefs deserve "a lesser degree of credibility").

[3] In the Superior Court, judgment entered on cross motions for judgment on the pleadings.  See Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).  We take the background facts from the complaint and the answer.

disabilities[4] in accordance with G. L. c. 71B, § 1, and the Federal Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq. (2012). From time to time, the school district enters into settlement agreements (agreements) with parents of students with disabilities to resolve disputes over entitlement to public funding for specific services or out-of-district educational placements. On January 17, 2012, the plaintiff, Michael Champa, a resident of the school district, sent a public records request for, as is relevant here, "[c]opies of all agreements entered into by the [school district] with parents and guardians, as part of the [individualized education program (IEP)] process,[5] in which the [school district] limited its contribution to education funding or attached conditions for it for out of district placements"

---

[4] The Commonwealth's special education law, G. L. c. 71B, defines a "school age child with a disability" as "a school age child in a public or non-public school setting who, because of a disability consisting of a developmental delay or any intellectual, sensory, neurological, emotional, communication, physical, specific learning or health impairment or combination thereof, is unable to progress effectively in regular education and requires special education services . . . . The use of the word disability in this section shall not be used to provide a basis for labeling or stigmatizing the child or defining the needs of the child and shall in no way limit the services, programs, and integration opportunities provided to such child." G. L. c. 71B, § 1.

[5] The school district disputes that the settlement agreements (agreements) are part of the individual education program (IEP) process, but we have no need to resolve that dispute in order to decide this case.

for school years 2007-2012.  The school district's interim
director of student services responded to the plaintiff's
request in a letter dated January 30, 2012, stating that the
information was not a matter of public record and that
"disclosure of the requested student records, in whole or in
part, would constitute a violation of the Family Education
Rights and Privacy Act (FERPA) and the Massachusetts [Student]
Record Regulations."  The plaintiff sought review by the
supervisor of public records, who ruled that the records sought
are exempt from disclosure.  The plaintiff then commenced this
action in the Superior Court, seeking a declaration that the
agreements were public records as well as a permanent injunction
ordering their disclosure.[6]

---

[6] The agreements between the school district and families
are at the heart of the dispute in this case.  The record in
front of the motion judge appeared to have contained what the
judge referred to in her written memorandum of decision as a
"sample settlement agreement," but the document she referenced
is not included in the record before us (at least under that
description).  The record here does contain a copy of an
agreement between the school district and the plaintiff that
concerns the educational programming of the plaintiff's
daughter.  This agreement contains the daughter's name and her
parents' names, and identifies the child as a child with special
education needs.  Copies of IEPs prepared for the child are
referenced in the agreement and attached to it.  The agreement
refers to the child's private school placement.  Further, the
agreement discusses the financial terms governing the private
school placement and the child's transportation to and from that
school.  Because the record only contains one agreement, we are
not in a position to generalize about the types of information
that the agreements may contain.  In support of the school
district's motion to stay pending appeal, the school district

On cross motions for judgment on the pleadings, a judge in the Superior Court (motion judge) allowed the plaintiff's motion and denied the school district's. The motion judge concluded that the agreements are "public records," not exempt under exemption (a), and although she recognized that certain portions of the agreements fell within the privacy exemption of exemption (c), she concluded that, with the name of the child and any description of the child's disability redacted, the agreements were subject to disclosure. The final judgment declared that the agreements were public records, were not "student records" under the Massachusetts student record regulations or "education records" under FERPA, and were not exempt from disclosure pursuant to exemption (a) or exemption (c). The school district was ordered to provide the plaintiff with a copy of all the agreements requested after the names of the students and any mention of disability were redacted, but further provided that

submitted affidavits of the defendant superintendent and director of student services. The affidavits aver that the agreements are maintained by the school district as part of an individual student's temporary education record, are kept in the student's special education file, and indicate that an agreement may contain information about a particular student's disability, progress, and needs, including emotional disabilities so serious that the student is not able to attend public school, and information about the educational services a student will receive. Given the undeveloped state of the record in relation to the agreements, in reaching our decision on the present appeal, we have accepted as accurate the general descriptions of the contents of the agreements provided by these affidavits.

the school district could apply to the court for clarification as to any other "unanticipated" personal information that arguably might disclose the identity of a particular student. The school district filed a notice of appeal.

Following the motion judge's decision allowing the plaintiff's motion for judgment on the pleadings, the school district filed a motion to stay pending appeal, supported by affidavits of the superintendent and the director of student services, which the motion judge allowed "[d]ue to the unique nature of this case and the significance of such disclosure." We transferred the case to this court on our own motion.

Discussion. 1. Standard of review. "We review de novo a judge's order allowing a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974)." Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 726 (2013). A motion for judgment on the pleadings tests the legal sufficiency of the complaint. Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984). For the purposes of a rule 12 (c) motion, all of the well-pleaded factual allegations of the nonmoving party are assumed to be true. Id.

2. Public records law. General Laws c. 66, § 10, of the Massachusetts public records law (public records law) requires access to public records in the possession of public officials. Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 430

(1983).  "Public records" are broadly defined, and include all "documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the [C]ommonwealth, or of any political subdivision thereof."  G. L. c. 4, § 7, Twenty-sixth.

Due to the broad scope of the public records law, in any court proceeding challenging the withholding of a requested document, "there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies."  G. L. c. 66, § 10 (c).  The statute's unambiguous language mandates disclosure of requested records limited only by the definition of "public records" found in G. L. c. 4, § 7, Twenty-sixth.  See DaRosa v. New Bedford, 471 Mass. 446, 451 (2015).  There is no dispute that as a general matter, the town's records, including the records of its schools, qualify as public records.  The question is whether the agreements are excepted from classification as public records because they fit within one or more of the statute's exemptions and, in particular, exemption (a) or exemption (c), or both.

a.  Exemption (a):  exemption by statute.  The definition of public records exempts materials or data that are "specifically or by necessary implication exempted from

disclosure by statute." G. L. c. 4, § 7, Twenty-sixth (a). In Massachusetts, the disclosure of information about public school students is governed in part by FERPA, and the Massachusetts student records law, G. L. c. 71, § 34D, and its implementing regulations, 603 Code Mass. Regs. §§ 23.00 (2006). The disclosure of information regarding special education students such as the plaintiff's daughter is further governed by the IDEA, and the Massachusetts special education law, G. L. 71B. The motion judge concluded that the agreements did not qualify as "education records" under FERPA or as "student records" under 603 Code Mass. Regs. §§ 23.00, and therefore exemption (a) did not apply.[7] The motion judge interpreted or defined both "education records" and "student records" as including only documents directly relating to a student's academic progress, and determined that the agreements do not fit within such a definition. We conclude that the definitions of these terms adopted by the judge were too narrow.

---

[7] The parties do not appear to have brought the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq. (2012), or the Massachusetts special education law, G. L. c. 71B, to the attention of the motion judge. In any event, the judge did not mention these statutes in her memorandum of decision.

i. <u>FERPA</u>. FERPA[8] defines "education records" as materials that "(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A). Neither FERPA nor its regulations limit the definition of "education records" to material relating to the student's academic progress. Under FERPA, the term "education records" has a broad scope. See <u>United States</u> v. <u>Miami Univ.</u>, 91 F. Supp. 2d 1132, 1149 (S.D. Ohio 2000) ("FERPA broadly defines 'education records'"); <u>Belanger</u> v. <u>Nashua, N.H., Sch. Dist.</u>, 856 F. Supp. 40, 48 (D.N.H. 1994), aff'd, 294 F.3d 797 (6th Cir. 2002). See also <u>Commonwealth</u> v. <u>Buccella</u>, 434 Mass. 473, 491 (2001) (Marshall, C.J., concurring in part and dissenting in part), cert. denied, 534 U.S. 1079 (2002), quoting 5 J.A. Rapp, Education Law § 13.04[4][a] (2000) (education records under "broad mandate" of FERPA intended to cover all aspects of student's educational life that "relate to academic matters or status as a student").

---

[8] The statute known as the Family Education Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g (2012 & Supp. II 2014), does not expressly prohibit disclosure of "education records," but it does condition receipt of Federal funds on the nondisclosure of education records. This is sufficient, as a practical matter, to satisfy the requirement that a statute exempt data or information by "necessary implication." G. L. c. 4, § 7, Twenty-sixth (<u>a</u>).

The agreements at issue are "education records" under FERPA because they satisfy both elements of the statutory definition. There is no dispute that the agreements "contain information directly related to a student" -- no one disputes that they contain the name of the student (as well as those of the student's parents) -- and they "are maintained by an educational agency."[9] In addition, the agreements may establish a student's school placement and they appear to define, at least in part, a student's educational programming, two matters that fall directly within the ambit of academic matters and status as a student. The school district maintains the agreements and keeps the documents in the individual student's special education file.

The fact that the agreements fall within the coverage of exemption (a) does not end the matter. The public records law specifically contemplates redaction of material that would be exempt, to enable the release of the remaining portions of a record. G. L. c. 66, § 10 (a) (requiring disclosure of "any segregable portion of a record"). See Reinstein v. Police Comm'r of Boston, 378 Mass. 281, 288 n.15 (1979) ("The 1978 amendment [to G. L. c. 66, § 10 (a),] requires disclosure of . . . any portion that falls within the statutory definition of

_____

[9] Further, the agreements do not fall within the list of statutory exceptions to "education records" under FERPA. See 20 U.S.C. § 1232g(a)(4)(B).

'public record' after exempt portions have been deleted").
Through its implementing regulations, FERPA provides a mechanism that allows a school to disclose information from education records publicly after removal or "de-identifi[cation]" of all personally identifiable information: "[a]n educational agency or institution, or a party that has received education records or information from education records under this part, may release the records or information without the consent [of parents or eligible students] required by [34 C.F.R.] § 99.30 after the removal of all personally identifiable information provided that the educational agency or institution or other party has made a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information." 34 C.F.R. § 99.31(b)(1) (2012).

"Personally identifiable information," as used in FERPA, includes, but is not limited to, the student's name; the names of the student's parents or other family members; the address of the student or student's family; personal identifiers, such as the student's social security number; and indirect identifiers, such as the student's date of birth. 34 C.F.R. § 99.3 (2012). The definition also includes "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who

does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty," and "[i]nformation requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." Id. The analysis to determine what redaction is necessary will be a case-by-case determination that considers the request, the school and the community, and the availability to the requester of other information that indirectly identifies the student. 34 C.F.R. §§ 99.3, 99.31(b)(1).

ii. Massachusetts student records law and regulations.[10] General Laws c. 71, § 34D, provides: "The board of education

---

[10] The student records statute, G. L. c. 71, § 34D, does not specifically address confidentiality of student records; confidentiality is dealt with in the regulations promulgated by the Department of Education (department) pursuant to § 34D. See 603 Code Mass. Regs. § 23.07 (2006). Exemption (a) refers specifically to exemptions by "statute," and does not mention regulations. The town and the plaintiff appear not to question that exemption (a) may cover material that a regulation requires to be treated as confidential, and more particularly, they appear to agree that material that would constitute part of a "student record" as defined in 603 Code Mass. Regs. §§ 23.02-23.03 (2002) would fall within the scope of exemption (a). Their disagreement is over the question whether the agreements qualify as "student record[s]" under these regulations. As discussed supra, we have concluded that exemption (a) applies in this case because FERPA fits squarely within the scope of exemption (a) and the agreements fit within the scope of FERPA's definition of "education records." Because we interpret the department's student record regulations to treat as confidential the same types of information as FERPA does, we do not need to decide in the present case whether the word "statute" in exemption (a) should be interpreted to include "regulations" --

shall adopt regulations relative to the maintenance, retention, duplication, storage and periodic destruction of student records by the public elementary and secondary schools of the [C]ommonwealth.  Such rules and regulations shall provide that a parent or guardian of any pupil shall be allowed to inspect academic, scholastic, or any other records concerning such pupil which are kept or are required to be kept."  In compliance with the statutory directive, the Department of Education (department) has promulgated student record regulations, 603 Code Mass. Regs. §§ 23.00, directing that no third party shall have access to information in or from a student record without the consent of the eligible student or the parent.  603 Code Mass. Regs. § 23.07(4) (2006).

The regulations define "[s]tudent [r]ecord" as "the [t]ranscript and the [t]emporary [r]ecord, including all information . . . regardless of physical form or characteristics concerning a student that is organized on the basis of the student's name or in a way that such student may be individually identified, and that is kept by the public schools of the Commonwealth."  603 Code Mass. Regs. § 23.02 (2002).  It is "limited to information relevant to the educational needs of the

---

generally, or at least in this instance.  Rather, we assume, without deciding, that the department's student record regulations fit within the meaning of "statute" for purposes of exemption (a).

student."  603 Code Mass. Regs. § 23.03 (2002).  We agree with the motion judge that the agreements do not fit within the regulation's definition of "transcript";[11] the issue is whether they are part of the student's "temporary record."  The temporary record includes all information in the student record not contained in the transcript and is generally defined as "information clearly . . . of importance to the educational process."  603 Code Mass. Regs. § 23.02.[12]

The record before us, limited as it is, indicates that an agreement is likely to contain information regarding a student's disability, progress, and needs -- information that is

---

[11] The transcript "shall contain administrative records that constitute the minimum data necessary to reflect the student's educational progress and to operate the educational system. These data shall be limited to the name, address, and phone number of the student; his/her birth date; name, address, and phone number of the parent or guardian; course titles, grades (or the equivalent when grades are not applicable), course credit, highest grade level completed, and the year completed." 603 Code Mass. Regs. § 23.02.  Independent of this regulation, the plaintiff appears to agree that insofar as the agreements contain the student's name and the parents' or guardians' names, this information should be redacted before the agreements are disclosed.

[12] The regulation further provides that "[s]uch information may include standardized test results, class rank (when applicable), extracurricular activities, and evaluations by teachers, counselors, and other school staff." 603 Code Mass. Regs. § 23.02.  This is the language on which the motion judge relied to conclude that the temporary record, and thus the student record, pertains to a student's academic progress.  Our reading of the pertinent regulations as a whole, however, persuades us that the "temporary record" has a broader scope than purely a measurement of academic progress.

unquestionably of importance to the student's "educational process," see 603 Code Mass. Regs. § 23.02, and "educational needs." 603 Code Mass. Regs. § 23.03. The agreement, therefore, qualifies as part of the student's temporary record, and therefore as part of his or her "student record." However, like FERPA, the Massachusetts student records law and regulations protect student records only as they pertain to certain information -- not entire documents. See 603 Code Mass. Regs. §§ 23.02 (defining student record and temporary record as "all information . . . concerning a student"), § 23.07(4) (third parties shall not have access to "information in or from a student record" [emphasis added]). Accordingly, under the public records law, any "segregable portion" of the record must be disclosed, if with the redaction it independently is a public record. G. L. c. 66, § 10 (a).

iii. Special education law.[13] The agreements by definition concern special education programs for the students to whom the agreements relate. Both the Federal IDEA and the Massachusetts special education law, G. L. c. 71B, contain provisions protecting the confidentiality of the educational records of students with disabilities who receive special education

---

[13] As mentioned, the applicability of the Federal IDEA and G. L. c. 71B apparently was not raised as an issue before the motion judge. See note 7, supra. We briefly consider the statutes here because they appear to be directly relevant.

services.  The IDEA adopts the confidentiality standards in FERPA and incorporates FERPA's definition of "education records," see 20 U.S.C. 1417(c),[14] but its implementing regulations introduce additional procedural protections to safeguard the confidentiality of personally identifiable information for students with disabilities.  See 34 C.F.R. §§ 300.561, 300.572, 300.573 (2002).  And G. L. c. 71B, § 3, unlike G. L. c. 71, § 34D, contains explicit provisions about confidentiality of information concerning students with disabilities.[15]

Nothing in these statutes suggests that records relating to students are confidential once all personally identifiable

---

[14] "The Secretary shall take appropriate action, in accordance with [FERPA], to ensure the protection of the confidentiality of any personally identifiable data, information, and records collected or maintained by the Secretary and by State educational agencies and local educational agencies pursuant to this subchapter."  20 U.S.C. § 1417(c).  See 34 C.F.R. §§ 300.610, 300.611 (2006).

[15] General Laws c. 71B, § 3, provides, in relevant part:

"The written record and clinical history from both the evaluation provided by the school committee and independent evaluation, if any, shall be made available to the parents, guardians, or persons with custody of the child.  Separate instructions, limited to the information required for adequate care of the child, shall be distributed only to those persons directly concerned with the care of the child.  Otherwise said records shall be confidential."

Further, "[e]valuations and assessments of children and special education programs shall remain confidential and be used solely for the administration of special education in the [C]ommonwealth."

information is removed.  Rather, what is confidential is certain information, again indicating that redaction of such information may render the particular document a public record that must be disclosed on request under the public records law.

b.  Exemption (c):  privacy exemption.  The statutory definition of public records also exempts materials or data that are "personnel and medical files or information; also any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy."  G. L. c. 4, § 7, Twenty-sixth (c).  The inquiry under the privacy exemption "requires that the seriousness of any invasion of privacy be balanced against the public right to know."  Attorney Gen. v. Assistant Comm'r of the Real Prop. Dep't of Boston, 380 Mass. 623, 625 (1980).  "Where the public interest in obtaining information substantially outweighs the seriousness of any invasion of privacy, the private interest in preventing disclosure must yield to the public interest" (citation omitted).  Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 156 (1979).

In identifying the existence of privacy interests, we consider, in part, whether disclosure would result in personal embarrassment to an individual of normal sensibilities, whether the materials sought contain intimate details of a highly personal nature, and whether the same information is available

from other sources.  Matter of a Subpoena Duces Tecum, 445 Mass. 685, 688 (2006), quoting Globe Newspaper Co. v. Police Comm'r of Boston, 419 Mass. 852, 858 (1995).  See, e.g., Collector of Lynn, 377 Mass. at 157 (public disclosure of lists of tax delinquents results in personal embarrassment, but disclosure does not amount to intimate details that are highly personal in nature; disclosure required).

The agreements may contain information that amounts to an unwarranted invasion of the student's personal privacy.  As previously discussed, the agreements may link the name of the individual student (and his or her family) to information about the services and programming the child will receive and information about the child's disability, progress, and needs. Further, the agreements are likely to identify the out-of-district school, which may indirectly identify the child's disability.  This type of information is highly personal, and disclosure may result in embarrassment and potentially lead to stigma,[16] bringing it within the scope of exemption (c).

Nonetheless, like exemption (a), exemption (c) does not cover, and thereby authorizes withholding, information that does

---

[16] When it enacted G. L. c. 71B, in 1972, the Legislature stated, "The General Court . . . finds that past methods of labeling and defining the needs of children have had a stigmatizing effect."  St. 1972, c. 766, § 1.  Currently, c. 71B calls for a flexible definition of disability "so as to minimize the possibility of stigmatization."  G. L. c. 71B, § 2.

not permit the identification of an individual. Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. at 438. As with exemption (a), the pertinent inquiry is whether the deletion of particular identifying information from the documents sought places the documents outside the exemption. Id. In assessing whether the documents contain identifying information, the inquiry must be considered "not only from the viewpoint of the public, but also from the vantage of those who [are familiar with the individual]." Department of the Air Force v. Rose, 425 U.S. 352, 380 (1976). The agreements here, although they contain identifying information, also include information that does not appear to invade the reasonable privacy interests of students or their families. Notably, once personally identifiable information is redacted, the financial terms of such agreements, which necessarily reflect the use of public monies, partially or fully, to pay for out-of-district placements, do not constitute an unwarranted invasion of personal privacy; indeed, the public has a right to know the financial terms of these agreements. See Collector of Lynn, 377 Mass. at 158.[17] As is true with exemption (a), once the

_____

[17] The school district argues that the line item in its budget that identifies the amount the district spends on out-of-school placements is sufficient to serve the purpose for which the plaintiff appears to want disclosure of the agreements, and therefore public access to the agreements is not necessary. This argument fails. The school district does not meet its

appropriate redactions of personally identifiable information are made, the agreements will no longer fit within the scope of exemption (c) and must be disclosed.

c. Confidentiality clause. Finally, the school district contends that the inclusion of a confidentiality clause in each of the agreements (other than the plaintiff's agreement) further prohibits their disclosure.[18] The school district is incorrect. Although the agreement may have served as a private settlement of a dispute between the school district and one of the families living in the school district, the fact that the school district and the family contractually agreed to keep the settlement private cannot, by itself, trump the public records law and the school district's obligation to comply with the law's

---

obligations with respect to the public records law by pointing out that the requester may be able to obtain some of the information from another source. Cf. Attorney Gen. v. Collector of Lynn, 377 Mass. 151, 157 (1979) (tax delinquent records did not fit within exemption [c] but were subject to disclosure as public records; court noted, "the seriousness of any invasion of privacy resulting from disclosure of the records of real estate tax delinquents is reduced since substantially the same information is available from other sources"). Cf. also Bougas v. Chief of Police of Lexington, 371 Mass. 59, 64 (1976) (where documents do not fit within one of public records law exemptions, they are accessible by "'any person' whether intimately involved with the subject matter of the records he seeks or merely motivated by idle curiosity").

[18] According to the affidavit of the superintendent filed in support of the school district's motion to stay, all of the agreements contain confidentiality provisions except the agreement regarding the plaintiff's daughter.

requirements.[19]   Cf. Ackerly v. Ley, 420 F.2d 1336, 1339 n.3 (D.C. Cir. 1969) (discussing Federal Freedom of Information Act [FOIA], 5 U.S.C. § 552 [2012]:  "It will obviously not be enough for the agency to assert simply that it received the file under a pledge of confidentiality to the one who supplied it. Undertakings of that nature can not, in and of themselves, override the [FOIA]").  Cf. also Hechler v. Casey, 175 W. Va. 434, 444 (1985) ("an agreement as to confidentiality between the public body and the supplier of the information may not override the [FOIA].  See Ackerly[, supra]").

Conclusion.  The final judgment in this case was entered on cross motions for judgment on the pleadings.  We have concluded that both exemption (a) and exemption (c) to the definition of public records in G. L. c. 4, § 7, Twenty-sixth, apply to the agreements, but that personally identifying information in the agreements is subject to redaction, and when the agreements are properly redacted, they must be disclosed.  The facts are too undeveloped in the record before us to make a determination regarding the necessary and appropriate redactions of personally identifying information to be made; a remand of this case to the

---

[19] This is not to say that every contractual agreement between a municipality or other public agency and a private party that contains a confidentiality clause is subject to disclosure as a public record; one of the statutory exemptions under G. L. c. 4, § 7, Twenty-sixth, may apply to the agreement.

Superior Court is necessary to permit this to be accomplished. See Georgiou v. Commissioner of the Dep't of Indus. Accs., 67 Mass. App. Ct. 428, 437-438 (2006).[20]  The judgment of the Superior Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

So ordered.

---

[20] It would be appropriate for the school district to propose redactions and, if there is a dispute, for the judge to rule on the disputed redactions before the entry of judgment, rather than through the vehicle of a postjudgment motion for clarification.