NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1165                                          Appeals Court

         JANE DOE[1] & another[2]  vs.  MARK THORELL & another.[3]


                         No. 24-P-1165.

     Plymouth.    October 10, 2025. – February 26, 2026.

             Present:  Massing, Sacks, & Allen, JJ.


"Anti-SLAPP" Statute.  Constitutional Law, Right to petition
     government.  School and School District.  School and School
     Committee.  Individuals with Disabilities Education Act.
     Parent and Child, Education.  Libel and Slander.  Unlawful
     Interference.  Emotional Distress.  Practice, Civil, Motion
     to dismiss.



     Civil action commenced in the Superior Court Department on
February 8, 2024.

     A special motion to dismiss was heard by William F.
Sullivan, J.


     Howard M. Cooper for the plaintiffs.
     Patrick T. Uiterwyk for the defendants.



     _____

     [1] Individually and as next friend of John Doe, Jr.

     [2] John Doe, individually and as next friend of John Doe, Jr.
These names are pseudonyms.

     [3] Abby Thorell.

SACKS, J.  The plaintiffs appeal from a judgment dismissing their complaint under G. L. c. 231, § 59H, the "anti-SLAPP" statute (§ 59H).  The defendants, Mark and Abby Thorell, parents of a fourth-grade public school student, wrote a letter asking the school to address allegedly disruptive classroom behavior by a specific, but unnamed, student in their son's class.  The Thorells sent the letter by e-mail to various local school officials, with copies to the parents of four other students in the same classroom who assertedly shared the Thorells' concerns.  Jane and John Doe, learning of the letter and believing that it referred to their son, John Doe, Jr. (Doe Jr.), filed a complaint in the Superior Court against the Thorells, alleging defamation, interference with Doe Jr.'s right as a child with a disability to a free and appropriate public education, and infliction of emotional distress.

The Thorells filed a special motion to dismiss the complaint under § 59H.  Applying the framework of Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539 (2024) (Bristol Asphalt), a judge allowed the motion.  He concluded that (1) the Thorells had shown the claims were based entirely on their protected petitioning activity and (2) the Does had failed to show the petitioning was "devoid of any reasonable factual support or any arguable basis in law."  G. L.

c. 231, § 59H, first par.  We now affirm the judgment of dismissal.

Background.  1.  The letter.  The Thorells sent their letter on November 6, 2023, to the school principal and assistant principal, the school committee, and the superintendent, with copies to the teacher and certain other parents.  The second paragraph of the letter began:

> "On Friday, November 3rd, our son came home retelling events from the day which included having to evacuate his classroom due to the unsafe and disruptive behavior of a specific classmate.  He further indicated the situation was so unsafe that he and his classmates had to take a math test for approximately [thirty] minutes and then complete [thirty] additional minutes of [online instruction] on their [C]hromebooks, all while sitting in the hallway. This, unfortunately, is not an isolated incident.  In the first two months of this school year, through the behavior of this specific classmate, our son has been exposed to obscene and profane language, bullying towards others, endangerment of property and other people, and most startling, racist remarks regarding his friend.  Notably, these behaviors are exhibited across all school settings (e.g., classroom, hallway, gym, library, music, and the lunchroom).

> "In a word, this is unacceptable.  We have internalized and saved our concerns regarding this specific classmate's behavior until this point."

The letter continued by requesting that the school administration and school committee take some action to address the situation.  First, quoting the school system's code of discipline, the Thorells asked, "What 'prompt action' can we expect 'in cases where unacceptable behavior interferes' [with learning]?"  Second, they asked for "appropriate support" for

the teacher.  Third, the Thorells stated that they supported "access to the Least Restrictive Environment[;] however, when [our] son and his classmates are REMOVED from their [fourth-grade] classroom, perhaps you need to re-evaluate your proper ability to support this specific student in a general education classroom."

The letter closed by asking for "actions . . . so our children are safe and continue to learn appropriately.  This is beyond the scope of a teacher['s] 'classroom management' abilities."  Significantly for this case, a postscript to the letter explained that copies were being sent to other concerned parents, at the request of those parents, so that they could express their support for the Thorells.

2.  The Does' complaint.  We recount the pertinent allegations of the complaint.  Doe Jr. had attended the school since 2022.  He sometimes became dysregulated while at school. The school district evaluated him and determined that he had a learning disability and would benefit from an individualized education plan (IEP).  When he started fourth grade in the fall of 2023, the complaint alleged, he "was regularly bullied throughout the school day, including by [the Thorells'] son and his friends."  Nevertheless, aside from the emotional distress resulting from the bullying, the complaint asserted that Doe Jr. was "beginning to settle into his school routine."

Then, on Friday, November 3, 2023, "there was an incident at school that resulted in [Doe Jr.] becoming dysregulated." That afternoon, the school principal sent an e-mail message to the Does, telling them that he had been in the classroom and had observed Doe Jr. to be "distressed" before "ultimately regulating." The following Monday morning, the teacher sent an e-mail message to the parents of all students in the class, other than the Does. The message reported that the preceding Friday, "[d]ue to disruptive student behavior within our classroom, our class had to move its learning to a secondary space." The teacher acknowledged to parents "the frustration many of you feel," assured them that he and other school staff were doing all they could "to minimize pauses in the learning," and invited parents who had further questions to contact him or the principal or assistant principal. Later that morning, the Thorells sent their letter.

The complaint alleged that the letter made "false allegations against [Doe Jr.]" and that it "urged the [d]istrict to remove him from his classroom." The Does alleged that the resulting emotional distress had left them "no choice" but to withdraw Doe Jr. from the school. On this basis, the Does asserted claims of defamation; interference by threats, intimidation, and coercion with Doe Jr.'s right to a free and appropriate public education under the Individuals with

Disabilities Education Act (IDEA) and other statutes; and intentional and negligent infliction of emotional distress.

The Thorells filed a special motion to dismiss the complaint under § 59H. They did not dispute that the unnamed student their letter referred to was Doe Jr. The parties filed additional evidentiary materials relevant to the motion. After a hearing, the judge allowed the motion.

Discussion. 1. The Bristol Asphalt framework. In Bristol Asphalt, 493 Mass. at 555-556, the Supreme Judicial Court returned to a simplified, two-stage framework for evaluating special motions to dismiss under § 59H. At the first stage, the motion's proponent (here the Thorells) must "make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the [proponent's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Id. at 555, quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998).

If a special motion proponent meets this threshold burden, the analysis proceeds to the second stage, at which § 59H requires allowance of the motion unless the special motion opponent (here the Does) shows "that the special motion proponent's exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law' and

. . . 'caused actual injury to the [special motion opponent].'"
Bristol Asphalt, 493 Mass. at 557, quoting G. L. c. 231, § 59H.
Our review of the judge's rulings at both stages is de novo.
Bristol Asphalt, supra at 560.

2. First stage:  whether Does' claims were based solely on Thorells' petitioning.  The Does argue that the Thorells did not meet their threshold burden to show that the Does' claims were based solely on the Thorells' petitioning activities.  The Does primarily base this argument not on the content or addressees of the letter itself, but on its postscript's statement that, before sending it, the Thorells had communicated about their concerns with some other parents.  The Does argue that those communications, made to private parties alone, did not constitute petitioning activity.  We are not persuaded.

Section 59H defines "a party's exercise of its right of petition" to include five categories of activity:

> "[1] any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; [2] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; [3] any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; [4] any statement reasonably likely to enlist public participation in an effort to effect such consideration; or [5] any other statement falling within constitutional protection of the right to petition government" (emphases added).

G. L. c. 231, § 59H, sixth par.  The Thorells argue that their pre-letter statements to other parents fell into the fourth category, "enlistment" petitioning, because the statements were reasonably likely to enlist public[4] participation in an effort to obtain school officials' consideration of the challenges posed by Doe Jr.'s classroom behavior.

Because the wording of the Thorells' postscript is important, we reproduce it in full.  It stated:

> "The individuals copied on this email are parents/guardians of other students in our son's class.  The daily occurrences of unsafe, bullying, and racist behavior has brought many families together out of concern for their children.  After expressing our concerns to them and indicating that we were writing a letter, they asked to be included on the email to express their support (i.e., they can/will offer their own sentiments in the context of [this] email)."

A fair construction of the postscript is that (1) the Thorells and other families had previously discussed their shared concerns about Doe Jr.'s behavior in the classroom; (2) when the

---

[4] Importantly, but somewhat counterintuitively, § 59H's reference to any statement reasonably likely to enlist public participation includes statements made to enlist private, i.e., nongovernmental, parties in an effort to effect governmental consideration of an issue.  See, e.g., Hanover v. New England Regional Council of Carpenters, 467 Mass. 587, 592-593 (2014) (union group's financial and organizational support of ten-taxpayer suit against town was enlistment petitioning); Baker v. Parsons, 434 Mass. 543, 551 n.13 (2001), abrogated by Bristol Asphalt, 493 Mass. at 558 n.18, 560 (biologist's statements to cause ten citizens to petition State environmental agency would constitute enlistment petitioning).

Thorells' concerns were heightened by the November 3 incident, they decided to write a letter about it and to inform other families that they were doing so; (3) the other families asked to be sent copies of the letter once completed, so that they could express support for the Thorells' message; and (4) the Thorells followed up by furnishing the requested copies.[5] Indeed, within a few hours after the Thorells' letter, the parents of a classmate sent an e-mail message to the school officials -- submitted to the judge with the Thorells' § 59H motion -- stating, "[We] would like to reiterate the sentiment in [the] letter of concern [about] . . . the constant disruption in the classroom[,] . . . [one] that we deeply feel needs to be resolved. . . . We are looking forward to hearing what the next steps are to make changes to this situation."

We agree with the Thorells that the pre-letter communications to other parents, as described in the postscript, constituted enlistment petitioning as described in § 59H.

---

[5] Nothing in the Does' complaint contradicts this construction of the postscript. Indeed, the body of the complaint did not mention either the postscript or any pre-letter communications by the Thorells to other parents. The letter was merely attached to the complaint. We doubt that the attachment alone gave the Thorells fair notice that the Does based their claims on a phrase in the postscript noting the Thorells' communications to other parents. We will nevertheless assume in the Does' favor that the complaint sufficiently alleges that the Thorells previously communicated to other parents the same concerns they raised in their letter to school officials.

Moreover, although such communications need not succeed in enlisting others' support in order to constitute enlistment petitioning, here they did succeed.  Therefore, the Does' claims, to the extent based on those communications, were "'based on' the [Thorells'] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."  Bristol Asphalt, 493 Mass. at 555, quoting Duracraft Corp., 427 Mass. at 167-168.

The Does advance four arguments to the contrary.  None of them is availing.

First, the Does stress that the other parents had no obligation to report the Thorells' concerns to the government.  No doubt, "petitioning activity can include a communication made to a private entity if the private entity, by law, must notify a governmental body of the communication" (emphasis added).  Sabatini v. Knouse, 105 Mass. App. Ct. 174, 180 n.10 (2025), citing Berk v. Kronlund, 102 Mass. App. Ct. 710, 715 (2023).[6]  But neither Sabatini nor Berk suggested that communications to private parties constitute petitioning only if those parties are consequently required to make reports to government.  To the contrary, § 59H's definition of petitioning includes statements

---

[6] Further appellate review in Sabatini has been granted on an issue unrelated to § 59H.  See 496 Mass. 1103 (2025).

merely "reasonably likely" to enlist others' participation in an effort to effect governmental consideration of an issue.

Second, the Does argue that the Thorells' statements to other parents could not be petitioning because they were unrelated to any "ongoing governmental proceeding." But enlistment petitioning does not depend on an ongoing proceeding. In referring to "any statement reasonably likely to enlist public participation in an effort to effect," i.e., bring about, governmental consideration of an issue, § 59H plainly includes circumstances in which no consideration of the issue has yet occurred and no proceeding concerning it is ongoing. "Statements made outside any formal governmental proceedings have often been considered petitioning activity." North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009) (citing cases).

Third, the Does argue that the Thorells failed to show that their statements to other parents met two petitioning criteria recognized in Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 149, 152 (2017), overruled on other grounds by Bristol Asphalt, 493 Mass. at 555-556. The two criteria were that the statements must be "reasonably geared to reaching" the government, Blanchard, supra at 152, and must be "objective[ly] . . . inten[ded] to influence a governmental proceeding," id. at 149. Importantly, in discussing those criteria, the Blanchard

court was not construing all five of § 59H's definitions of petitioning, but only the second definition, referring to statements made "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding" (emphasis added). Id. at 147, quoting G. L. c. 231, § 59H. See Blanchard, supra at 148 n.13 (no claim that statements fell under any other definition). See also Lucey v. Kinnon, 106 Mass. App. Ct. 358, 365-366 (2025).

The two Blanchard criteria may be relevant when construing other definitions. See Sabatini, 105 Mass. App. Ct. at 179-181 (discussing definition covering "any statement reasonably likely to encourage consideration or review of an issue" by government). For enlistment petitioning under § 59H, it may be that the "effort to effect [governmental] consideration" in which a challenged statement seeks to "enlist public participation" must be an effort that is both reasonably geared to reaching and intended to influence government. But here the Thorells' letter itself met those two criteria; it thus was such an "effort." And the statements mentioned in the postscript were reasonably likely to enlist other parents' participation in that effort.

Fourth and finally, shifting their focus to the content of the Thorells' letter, the Does argue that the letter was not "legitimate petitioning activity" (emphasis added). Bristol

Asphalt, 493 Mass. at 556. They contend that the letter did not seek any "legitimate relief" but instead was "targeted at eviscerating the [F]ederal statutory rights of a child with disabilities by fomenting community pressure via defamatory lies," in "an attempt to run [Doe Jr.] out of school and deprive him of his right to be educated in the least restrictive environment." To the extent the Does' argument is that the Thorells' motive deprived their letter of its status as petitioning, the argument is foreclosed by Bristol Asphalt's statement that "neither a special motion proponent's identity, nor the motive behind its decision to engage in petitioning activity (or to file a special motion to dismiss), is relevant to the threshold inquiry" (emphasis added). Bristol Asphalt, supra at 563. See Benoit v. Frederickson, 454 Mass. 148, 153 (2009) (error to rule that legitimacy of petitioning depends on motive); Hidalgo v. Watch City Constr. Corp., 105 Mass. App. Ct. 148, 151-152 (2024) (alleged subjective motive for lawsuit irrelevant to whether it constitutes petitioning or lacks reasonable basis in fact or law).[7] To the extent the Does' argument is that the letter sought relief that education laws

---

[7] Further appellate review in Hidalgo has been granted on an attorney's fee issue not relevant here. See 496 Mass. 1104 (2025).

forbade and, therefore, had no arguable basis in law, we address the argument infra.

In sum, in the first stage of the analysis, the Thorells have shown that the Does' claims against them are "based on the [Thorells'] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities" (quotation and citation omitted). Bristol Asphalt, 493 Mass. at 555.

3.  Second stage:  whether petitioning was devoid of factual or legal support.  At the second stage of the § 59H analysis, we ask whether the Does have carried their burden of showing that the Thorells' petitioning is "'devoid' of any reasonable factual support or any arguable basis in law." Bristol Asphalt, 493 Mass. at 557.[8]  The Bristol Asphalt court stressed that "proving petitioning is 'devoid' of any reasonable factual support or any arguable basis in law is a difficult task" for the special motion opponent.  Id.  Thus, "proving that petitioning activity was illegitimate presents [a] 'high bar'" for the Does (citation omitted).  Id. at 558.  They cannot prevail merely by submitting affidavits controverting the

---

[8] Because we ultimately conclude that the Does have not carried this burden, we need not address their additional second-stage burden of showing "actual injury."  Bristol Asphalt, 493 Mass. at 557.

statements made in the Thorells' petitioning and in the affidavits supporting the Thorells' special motion to dismiss. See id. at 557-558. "[M]aterial, disputed credibility issues may not be resolved in the [Does'] favor" in ruling on the presence of reasonable factual support. Id. at 558. Rather, the Does essentially must show that the Thorells' petitioning was "frivolous[]" (citation omitted). Id. at 559-560. We address in turn the issues of factual and legal support.

a. Devoid of any reasonable factual support. Citing a phrase in Bristol Asphalt, the Does argue that, once they "submitted evidence and argument challenging the reasonableness of the factual and legal basis of the petitioning, [the Thorells] cannot merely rely on speculation, conclusory assertions, or averments outside of [their] personal knowledge for the court to identify reasonable support" (emphasis added). Bristol Asphalt, 493 Mass. at 558. The Does assert that the Thorells, in support of their special motion, failed to offer statements by anyone with personal knowledge of events in the classroom. Instead, say the Does, the Thorells impermissibly relied only on the hearsay statements of their son, and the statements of other parents likewise based only on their own children's reports. We are not convinced.

i. Personal knowledge and children's statements. Contrary to the Does' argument, Bristol Asphalt's personal knowledge

requirement does not mean that reports from third parties, such as the Thorells' son here, can never supply factual support for petitioning. As an initial matter, we do not agree with the Does' effort throughout their brief to characterize the personal knowledge requirement as an exclusion of "hearsay." The Supreme Judicial Court did not use that term in Bristol Asphalt, 493 Mass. at 558, and we doubt that the court intended to exclude admissible hearsay -- such as business records, excited utterances, and many other types of evidence routinely treated as reliable -- when evaluating the factual support for petitioning activity. Cf. Hidalgo, 105 Mass. App. Ct. at 153 (petitioning devoid of factual support where not based on business owner's personal knowledge or consultation of business records). Excluding all hearsay would risk making § 59H protection unavailable to persons who complain to their elected representatives about government actions in, for example, Washington, D.C., or Boston, unless those persons had been personally present in those locations to observe the actions that led to the complaints.

As for personal knowledge, although the Thorells' son's statements gave them no personal knowledge of events at school, they plainly did have knowledge of their son's concerns about

those events.[9]  This in turn gave the Thorells a factual basis for expressing their own concerns to school officials.  Numerous factors show that the Thorells acted reasonably in doing so.  Those factors include, but are not necessarily limited to, their son's age (old enough for fourth grade), his ability to personally see and hear what he later reported to his parents, the subject and content of his reports, and his observed demeanor.[10]  Cf. Benoit, 454 Mass. at 153-154 (parents' involvement in their minor daughter's reporting of alleged rape to police plainly came within scope of petitioning and was not shown to lack any reasonable factual support).  The question for us is not whether the son's reports were true, but whether the Does have shown that those reports provided no reasonable basis in fact for the Thorells to write their letter of concern.  The Does have not met that burden.

The Does particularly argue that there was no reasonable factual support for the letter's reference to "daily occurrences of unsafe, bullying, and racist behavior."  Although this

---

[9] Cf. Mass. G. Evid. § 801(c) note (2025) (statement not hearsay if offered only to show notice to or other effect on hearer).

[10] The Thorells' affidavits recounted their observations that reported events in the classroom had caused their son to "suffer with anxiety" and have "negative feelings . . . about going to school."

statement may well have been rhetorical excess, it did not render the letter devoid of support.  Under § 59H, the question is not whether each and every assertion made in the course of petitioning activity has reasonable factual support, but whether the special motion proponent's "exercise of its right to petition [itself] was devoid of any reasonable factual support." G. L. c. 231, § 59H, first par.  The court in Bristol Asphalt "clarif[ied] that the mere existence of an isolated 'untrue' or 'misleading' statement would not, in and of itself, mean that the petitioning activity was devoid of any reasonable factual support or arguable basis in law" (citation omitted).  Bristol Asphalt, 493 Mass. at 558 n.18.

The reports of other students to their respective parents, as shown by affidavits the Thorells filed in support of their special motion, were consistent in numerous respects with the facts set forth in the Thorells' letter.  As already stated, the judge had before him a copy of an e-mail message to school officials from parents of another child in the classroom, reiterating the Thorells' concerns.  Also before the judge were the similar written statements of the parents of four other children, asserting, for example, that "[t]he racial slurs, explicit language, sexual remarks, violent behavior with damage of property as well as just an unpleasant and chaotic environment . . . went on for far too long."  One of those

parents went on to discuss allegations of racist behavior toward her child by an unnamed student, whom the Does have not disputed was Doe Jr.

Not unexpectedly, the Does submitted affidavits that vigorously disputed the Thorells' and other parents' statements about events at school. But submitting materials controverting the factual support for the Thorells' petitioning was not enough to carry the Does' burden of showing that the petitioning was devoid of any reasonable factual support. See Bristol Asphalt, 493 Mass. at 557-558.

ii. Statements of school officials. Furthermore, the Thorells did not rely solely on the reports of their son and other children; they also relied on the written statements of three school officials with personal knowledge of events in the classroom and the school's response. The first such statement was the teacher's e-mail message to classroom parents about the November 3 "disruptive student behavior" incident. That message recognized parents' "frustration" and assured them that he and others were already working to address "pauses in the learning," the plural suggesting that the recent incident was not the only pause that might concern parents. The teacher's message also

invited parents to contact him or the principal or assistant principal with questions.[11]

The second such statement was the principal's e-mail message to the Does on the day of the incident, noting that he had been with Doe Jr. in the classroom earlier and recognizing that Doe Jr. had become dysregulated. The third such statement was the superintendent's response via e-mail to the Thorells' letter, acknowledging that their concerns were not unfounded. While not claiming personal knowledge of specific events in the classroom, the superintendent was in a position to know, as her message stated, that there was an "ongoing situation" related to the goal of "provid[ing] a safe learning environment," that she and other school system officials had been "working . . . to find a resolution," and that she was directing the principal to communicate further information the following week.

These statements, based on the personal knowledge of the teacher, principal, and superintendent, did not support every assertion of fact in the Thorells' letter. But they did support that there had been a significant incident involving disruptive student behavior in the classroom, related to an ongoing

---

[11] This invitation alone should make us pause before concluding that the Thorells' letter, sent to the teacher and those two other officials, shortly thereafter and on the same subject, was devoid of any factual basis.

situation that required the attention of multiple school officials, and in which parents would be expected to be interested.  For this additional reason, the Does did not carry their burden of showing that the Thorells' petitioning activity was devoid of any reasonable factual support.

b.  <u>Devoid of any arguable basis in law</u>.  The Does may alternatively carry their second-stage burden by showing that the Thorells' petitioning was devoid of any arguable basis in law.  See <u>Bristol Asphalt</u>, 493 Mass. at 557.  Here, characterizing the Thorells' letter as asking that Doe Jr. be removed from the classroom or at least "disciplined," the Does argue that there was no legal basis either to remove Doe Jr. or to direct a request to discipline him to officials who had no disciplinary authority.  Although we accept for purposes of this argument the Does' claim that the Thorells' letter asked for such measures, the letter also asked for additional relief.  The Does have not shown that any of these requests was devoid of any arguable legal basis.

i.  <u>Request for removal from classroom</u>.  The Does argue that the request to remove Doe Jr. from the classroom had no legal basis because Doe Jr.'s IEP team had determined, only a week before the November 3 incident, that Doe Jr. should "remain in a mainstream classroom with additional support."  The Does view the removal request as legally baseless because the body

empowered to decide on Doe Jr.'s placement had already done so. Cf. Bristol Asphalt, 493 Mass. at 565-566 (challenge to site plan approval lacked arguable legal basis where board's approval already squarely addressed issues underlying challenge and no evidence showed board's approval conditions would be insufficient).

Here, to begin with, the Does made no showing that the Thorells knew or should have known that Doe Jr. had an IEP, let alone that the IEP team had recently met or what it had decided.[12] When determining whether petitioning has been shown to be devoid of any arguable basis in law, it is relevant to consider what the petitioners already knew or reasonably should have known about what action the government had taken on the issue raised in the petition. And it would not be enough for the special motion opponent (here the Does) to show that the special movant's petitioning activity was based on an error of law. Rather, the special motion opponent must show that no reasonable person could conclude there was any basis in law for

---

[12] Such records and data are generally confidential under Federal and State educational privacy laws. E.g., 20 U.S.C. § 1232g(b)(1); 603 Code Mass. Regs. § 23.07(4) (2002). See Champa v. Weston Pub. Sch., 473 Mass. 86, 90-95 (2015). The Does point to the letter's use of the phrase "[l]east [r]estrictive [e]nvironment" as showing the Thorells' awareness that Doe Jr. had a disability. Even if the Thorells knew that fact (which their affidavits denied), it would not mean they knew of the IEP team's recent decision that Doe Jr. should remain in the classroom.

the petitioning activity. See <u>Wenger</u> v. <u>Aceto</u>, 451 Mass. 1, 7 (2008).

Moreover, even if we assume the Thorells knew of the IEP team's recent placement decision, that would not deprive the Thorells' request to change that decision of any arguable basis in law. The IEP team made its decision the week before the November 3 incident; the Thorells' request to remove Doe Jr. was made after and because of that incident. It was directed to, among others, two members of the IEP team (the teacher and the principal). The Does point to no law barring the IEP team from revisiting its decision based on a subsequent incident arguably calling the wisdom of that decision into question. A request for reconsideration based on changed circumstances is an accepted part of our legal system. See, e.g., <u>Audubon Hill S. Condominium Ass'n</u> v. <u>Community Ass'n Underwriters of Am., Inc</u>., 82 Mass. App. Ct. 461, 470 (2012). Cf. <u>Moe</u> v. <u>Sex Offender Registry Bd</u>., 444 Mass. 1009, 1009 (2005) ("In the absence of statutory limitations, administrative agencies generally retain inherent authority to reconsider their decisions").

The Does nevertheless maintain that the Thorells' letter had no legal basis because the IEP team's decision was "the only possible decision" that met IDEA requirements. Yet the case they rely on uses no such definitive terms. See <u>Oberti by Oberti</u> v. <u>Board of Educ. of the Borough of Clementon Sch. Dist</u>.,

995 F.2d 1204 (3d Cir. 1993).  There, in reviewing whether a school system had satisfied the IDEA's mandate of educating children with disabilities in mainstream classrooms to the maximum extent appropriate, the court agreed that one permissible consideration was "the possible negative effect the child's inclusion may have on the education of the other children in the regular classroom," i.e., "excessive disruption."  Id. at 1217.  A request to consider removing a child from a mainstream classroom because of that child's recent and significant disruptive behavior would thus not be devoid of any legal basis in the IDEA, even if consideration of other factors led to a conclusion that removal was inconsistent with the IDEA.  See Wenger, 451 Mass. at 7 (error of law alone does not render petitioning devoid of any legal basis).

ii.  Request for discipline.  The Does argue that the letter's request for discipline of Doe Jr. lacked any legal basis insofar as it was directed to officials, such as the superintendent and school committee members, who had no disciplinary authority.[13]  In support of this argument, the Does submitted to the judge a copy of the school system's code of

---

[13] Although the Does frame their argument as going to whether the Thorells' letter was "legitimate" petitioning activity, we consider it on the question whether the petitioning was devoid of any arguable legal basis.

discipline, under which, they say, only the principal or a designee (typically an assistant principal) may impose disciplinary consequences.

But even on the issue of discipline, the Does overlook that school principals are appointed by the superintendent and carry out their duties "subject to the [superintendent's] supervision and direction."  G. L. c. 71, § 59B.  The superintendent in turn is selected and may be terminated by the school committee.  See G. L. c. 71, § 37.  Thus the superintendent and, less directly, the school committee have the authority to ensure that principals enforce appropriate discipline.[14]

iii.  <u>Other relief requested</u>.  Discipline aside, the Thorells' letter could fairly be read as seeking other relief as well -- relief within the authority of the superintendent or the school committee to grant, or at least to facilitate.  The letter employed language broad enough to include requests for additional personnel, training, or other resources to assist the teacher and Doe Jr. in dealing with the issues the Thorells

---

[14] The disciplinary code here begins with a message from the superintendent offering "to meet with anyone regarding its interpretation or implementation."  The code also gives the superintendent authority to impose or review disciplinary measures in various circumstances.  See G. L. c. 71, § 37H (superintendent shall publish district's policies on student conduct and discipline).

identified.[15] We need not delve into the details of our education laws to be confident that a school committee and superintendent have some authority to determine, or at least affect, the resources to be made available for particular purposes within a school system. See generally G. L. c. 71, § 37 (powers of school committee); G. L. c. 71, § 59 (powers of superintendent).

Finally, the Thorells' letter asked in general terms for "actions . . . so our children are safe and continue to learn appropriately." The Does have not shown that there was no lawful step the school committee or superintendent could even arguably take to bring about such actions. Accordingly, we conclude that the Does failed to carry their burden of showing that the Thorells' letter, insofar as addressed to those officials, was devoid of any arguable basis in law.[16]

---

[15] Indeed, one of the Does' affidavits stated that, even before the November 3 incident, the IEP team was considering measures such as having a consultant observe Doe Jr. in his classroom and having Doe Jr.'s therapist train the teacher and paraprofessional on a de-escalation technique.

[16] In any event, we would be reluctant to conclude that directing otherwise proper petitioning to the "wrong" government official, or including along with proper requests for redress a request that lacked legal basis, would deprive the petitioning of its protection under § 59H.

Conclusion.  The special motion to dismiss was properly

allowed.[17]

Judgment affirmed.

---

[17] Pursuant to § 59H and Fabre v. Walton, 441 Mass. 9, 10-11 (2004), the Thorells may, within fourteen days of the issuance of this decision, submit an application for appellate attorney's fees and costs, with supporting materials.  The Does shall have fourteen days thereafter to respond.  The Thorells state that their request for attorney's fees and costs for counsel's trial court work on the special motion to dismiss was deferred by agreement pending this appeal.  Upon issuance of the rescript, the Thorells may further pursue that request in the trial court.